**P. W. SIEBRAND and Hiko Siebrand, a Co-Partnership, Doing Business Under the Name of Siebrand Bros., Plaintiffs,**

v.

**EYERLY AIRCRAFT COMPANY, a corporation, Defendant.**

Civ. No. 60-27.

United States District Court
D. Oregon.

Aug. 16, 1961.

See also 185 F.Supp. 538.

Dusenbery, Martin, Beatty & Parks, John C. Beatty, Jr., Portland, Or., for plaintiffs.

Maguire, Shields, Morrison, Bailey & Kester, W. H. Morrison, Howard K. Beebe, Winfrid K. Liepe, Portland, Or., Robert W. DeArmond, DeArmond & Sherman, Salem, Or., for defendant.

KILKENNY, District Judge.

This is an action in which plaintiffs' claim the right to be indemnified by defendant against the effect of certain judgments entered in the United States District Court for the District of Montana.

I have heretofore made and filed preliminary findings of fact.

Plaintiffs are engaged in the business of operating a circus and carnival which includes furnishing for compensation rides on various machines and devices used for amusement purposes. Defendant is engaged in the business of manufacturing, overhauling, renovating and repairing amusement rides and devices for sale to or on behalf of those engaged in the circus and carnival business. Among such rides and devices manufactured by defendant is one commonly known as the "Octopus." In 1937 plaintiffs purchased from defendant an Octopus of a type designed and manufactured by defendant. In January 1951 plaintiffs returned the Octopus to defendant's factory for certain repairs, overhauling and the installation of new sweep arms and extension bars. Said repairs, overhauling and installation were completed in February 1951. Defendant knew that plaintiffs intended

to use the Octopus in providing rides for the public. In August 1954 one of the extension arms which had been installed by defendant in February 1951 failed and caused three of plaintiffs' patrons who were riding in the bucket supported by said arm to fall to the ground, resulting in personal injuries to each. Each of said persons instituted an action in the United States District Court for the District of Montana and each obtained judgment against the plaintiffs for a substantial sum. Plaintiffs advised defendant of the accident and in October 1954, defendant instigated an investigation. On January 20, 1956, plaintiffs tendered the defense of the above actions to defendant and shortly thereafter the defendant rejected the tender of said defenses. In the Montana action the Court submitted to the jury the following interrogatory, to which the jury answered "Yes":

"Do you find from the evidence in this case that the accident was caused by a defect in the construction of said Octopus by the manufacturer?"

Plaintiffs contend, and the Court has found, that the Octopus is an inherently dangerous amusement device and requires extremely careful design and manufacture and extreme care in rebuilding. Defendant held itself out to be a competent and careful designer, manufacturer and rebuilder of such machines and the plaintiffs held themselves out to be careful and competent operators of amusement devices, such as the Octopus. The Court further found that plaintiffs relied on the skill and judgment of the defendant in the purchase and rebuilding of said amusement device and that defendant impliedly warranted and represented that said device was properly designed and properly constructed for the use and purpose intended and at the same time expressly warranted that the rebuilt and reconstructed Octopus would be as good as a new 1951 model and would carry the same guarantee and that the new sweep arms and extension arms would carry four times the stress and have four times the life of a pre-war model and that such sweep arms and extension arms were designed to compensate for any difference in operators. Plaintiffs relied on the warranties and representations in the first instance. The Court further found that the defendant breached both the implied and express warranties in the particulars mentioned in the findings.

Defendant contained, and the Court found, that plaintiffs were negligent in a manner which proximately contributed to the accident and the injuries sustained by the judgment creditors in the particulars set forth in the preliminary findings and had notice of defendant's breach of warranties long prior to the occurrence in question and had negligently repaired and rewelded, on numerous occasions, fractured and loosened bonds in the stub arm involved in the accident. The negligence of the plaintiffs and the breaches of warranty by the defendant proximately caused the accident and resulting injuries to the judgment creditors and plaintiffs' negligence was active and a substantial and contributing factor in such cause.

No notice of any kind was given by plaintiffs to defendant of the defective construction which was discovered by plaintiffs a considerable period of time in advance of the accident.

Plaintiffs instituted this action against defendant in this Court on the theory that defendant, having breached its express and implied warranties in connection with such reconstruction, should indemnify the plaintiffs for the amount of the judgments recovered against plaintiffs, together with certain costs and expenses incurred in such actions.

Plaintiffs contend, and properly so, that defendant, having received notice of the pendency of the original action and an opportunity to defend and having refused to participate in such defense, is bound by the determination of all facts in the Montana action which were *material* to a recovery against the defendant in that action, including liability. There are cases which hold that, on certain issues, a determination of the issues against the indemnitee will establish a

right to recovery, as a matter of law, against the indemnitor. For instance, where the indemnitor leaves the defense of a case to the indemnitee, after proper notice and a request to defend, and where the facts in the case would demonstrate liability on the indemnitor, then in subsequent litigation between the parties the findings *necessary* to the judgment in the original action are binding on all concerned. Washington Gas Light Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712. This rule is followed in the Ninth Circuit. Booth-Kelly Lumber Company v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 20 A.L.R.2d 695; Farmland Irrigation Co. v. Dopplmaier, 9 Cir., 1955, 220 F.2d 247. Oregon follows the same rule. City of Astoria v. Astoria & C. R. R. Co., 67 Or. 538, 550, 136 P. 645, 49 L.R.A.,N.S., 404. The scope of the estoppel created by the judgment in the primary cases embraces all issues *necessarily* determined in the original case. Booth-Kelly Lumber Co. v. Southern Pacific Co., supra. However, it is only those facts *necessarily* litigated and determined against the indemnitor in the former action which would be binding on it in subsequent litigation. Security Insurance Co. of New Haven v. Johnson, 10 Cir., 1960, 276 F.2d 182, 188, 189; Crawford v. Pope & Talbot Co., Inc., 3 Cir., 1953, 206 F.2d 784, 795. In making the determination as to what facts were necessarily determined by the verdict of the jury in the original case the Court, on litigation between the indemnitor and the indemnitee, should look to the entire record, including the pleadings, the evidence, the instructions, the verdict, and the judgment. Washington Gas Light Co. v. District of Columbia, supra.

 The consolidated complaint in the Montana action charges that defendants (here plaintiffs) negligently "constructed, *maintained, operated, managed, conducted,* and * * * controlled said amusement device." Of course, the defendant in this case would not necessarily be liable for the negligent maintenance and operation of the device by the plaintiffs. The plaintiffs recognize this hurdle and attempt to avoid it by arguing that the Court in the Montana case did not submit to the jury the question of negligent maintenance and operation. The Court instructed the jury that it was sworn to try the issues of fact as presented by the allegations of the complaint and the answer of the defendant. The Court defined ordinary care and told the jury that the operator was required to use due care and diligence to put and *keep* the device in a reasonably safe condition for its patrons. After a thorough reading of the instructions, I am of the opinion that the Montana court submitted the question of negligent maintenance and operation to the jury. Plaintiffs urge that the affirmative answer by the Montana jury to the special interrogatory precludes an inquiry into other issues of negligence which may have been submitted. First of all, the special interrogatory did not require the jury to find that defects in design or manufacture were the *sole* cause. I do not believe it is necessary for me to pass on the propriety of submitting a special interrogatory on one specification where the Court submits to the jury other specifications of negligence. The practice may be questionable. Under the circumstances, the interrogatory and the answer thereto are not conclusive against defendant in this case.

 Assuming, *arguendo*, that the verdict and the special interrogatory in the original case were conclusive against defendant on the issues involved, nevertheless, I would be compelled to hold that many of the issues of active negligence charged against the plaintiffs in this case were not within the issues of the original case. Such specifications of negligence as extreme slack in the drive mechanism of the Octopus, lack of maintenance and repair in the moving parts of the drive, defective repairing and welding of fractures and loose bonds on the stub arm, operating and maintaining the Octopus with insufficiently trained and instructed personnel, failing to warn passengers of the defective condition of the equipment and overloading of the seat bucket, were

**940**

issues in the present case which were not involved in the original cause. Having found plaintiffs guilty of active negligence in such particulars, the verdict of the jury, the special interrogatory and the judgment in the Montana case are not conclusive and do not create an estoppel in favor of or against either plaintiffs or defendant in this cause. Washington Gas Light Co. v. District of Columbia, supra; Crawford v. Pope & Talbot, Co., Inc., supra.

Defendant urges that plaintiffs' active negligence in the maintenance, repair and operation of the Octopus precludes plaintiffs' recovery even though defendant was negligent in the design and manufacture of the device and breached its warranties with reference thereto. Defendant claims that plaintiffs' negligence in rewelding fractures and loose bonds in the stub arm of the Octopus and in permitting in excess of 20 inches of slack in the drive mechanism of the Octopus which operated the bucket in which the passengers were riding, and in other particulars, was active negligence and that such negligence would preclude plaintiffs from recovery, regardless of defendant's breaches of warranty.

■ ■ It is well settled that where the negligence of the indemnitee is passive, such passive negligence will not prevent a recovery. Astoria v. Astoria & C. R. R. Co., supra. My findings in this case that plaintiffs negligently welded and re-welded essential parts of the defective area, after the same was delivered by defendant, require the obvious conclusion that the plaintiffs knew of the negligent manufacture and design of the device and that they continued to use such device after having actual knowledge of

such defects. Furthermore, plaintiffs must have had actual knowledge of the extreme slack in the drive mechanism of the device and the effect of such slack on the structural portions of the device when the motor was engaged to the drive. Plaintiffs are correct in their statement that they are in the same position as a purchaser under a contract of sale. Where a buyer has actual knowledge of a defect in an article which he has purchased and then makes repairs and uses such article, he waives all warranties against the defect.

■ The findings establish, and I find, that the active negligence of the plaintiffs and the breaches of warranty by the defendant concurred in proximately causing the injuries on which the judgments were recovered. In such a case the right of indemnity does not exist, unless by special contract. United States Fidelity & Guaranty Co. v. Thomlinson-Arkwright Co., 172 Or. 307, 325, 141 P.2d 817; Southern Pacific Co. v. Morrison-Knudsen Co., 216 Or. 398, 338 P.2d 665. The rules of common law govern the law of indemnity unless the parties have created a new liability. Astoria v. Astoria & C. R. R. Co., supra; Southern Pacific Co. v. Morrison-Knudsen Co., supra. A person who is negligent in making repairs is an active tort-feasor and cannot recover indemnity from the person who furnished the defective appliance or who participated in making the repairs. Standard Brands v. Bateman, 8 Cir., 1950, 184 F.2d 1002; Cedar Rapids & I. C. Ry. & Light Co. v. Sprague Electric Co., 280 Ill. 386, 117 N.E. 461, L.R.A.1918B, 200; Lommori v. Miller Hotels, Inc., 63 N.M. 342, 319 P.2d 949; Restatement of the Law, Restitution, § 93 d.[1]

---

1. Restatement of the Law, Restitution, § 93.
 "(1) Where a person has supplied to another a chattel which because of the supplier's negligence or other fault is dangerously defective for the use for which it is supplied and both have become liable in tort to a third person injured by such use, the supplier is under

a duty to indemnify the other from expenditures properly made in discharge of the claim of the third person, if the other used or disposed of the chattel in reliance upon the supplier's care and if, as between the two, such reliance was justifiable.
 "(2) The rule stated in Subsection (1) applies where a person has negligently

This is not a case where the indemnitor by special written agreement promised to indemnify and save harmless the indemnitee from all liability, cost and expense resulting directly or indirectly from the use of the article, such as the agreement involved in Southern Pacific Co. v. Morrison-Knudsen Co., supra. The agreement in that case was construed by the Oregon Supreme Court to *indemnify against the negligence* of the indemnitee. Here, we have no such an agreement.

 Plaintiffs cite Hansen v. Firestone Tire & Rubber Co., 6 Cir., 1960, 276 F.2d 254, and Bahlman v. Hudson Motor Car Company, 290 Mich. 683, 288 N.W. 309, in support of their contention that defendant is liable even though plaintiffs were guilty of active negligence which proximately contributed to the injuries. Those cases are distinguishable from the facts in the case at bar. In each one of those cases the original purchaser was also the injured party and prosecuted an action directly on the covenant of warranty. The law of indemnity was not involved in those cases. In neither of those cases could contributory negligence be intelligently applied as a defense to an action for a breach of the particular express warranty. The express warranties in the present case are not of such character as will preclude the application of the doctrine of active negligence when applied to the plaintiffs. Plaintiffs' actions in negligently rewelding the fractures and loosened bonds of the arm and in failing to repair the extreme slack in the drive mechanism in fact nullified the express warranties to the effect that the rebuilt device was as good as new, that the new sweep arms and extension arms were four times as strong and had four times the life of a pre-war model and that the new sweep arms and extension arms compensated for the difference between operators. This is the doctrine taught in Young v. Aeroil Products Co., 9 Cir., 1957, 248 F.2d 185, 190, 191. Although I find no Oregon case directly in point on this particular problem, I hold that the Oregon Supreme Court, if faced with the same question, would follow Collum v. Pope & Talbot, Inc., 135 Cal.App.2d 653, 288 P.2d 75, the case which was the basis for the Court of Appeals decision in Young v. Aeroil Products Co., supra.

 The repairs and other work was done on the article in Oregon and the law of that state on the subject of warranty and indemnity should apply. However, I do not believe that Oregon law on the same subjects differs from the law of the state of Montana.

 Finally, I am of the opinion that the plaintiffs failed to give timely notice of the breaches of the warranty.[2] I have found as a fact that plaintiffs, on numerous occasions, welded and rewelded metal strips on the arm, the failure of which caused the accident. This rewelding and repair conclusively establishes that plaintiffs had knowledge of the defects in the arm. The Oregon Supreme Court has held that the requirement of the statute with reference to the giving of notice is a condition precedent to a recovery on the theory of breach of warranty. Maxwell Co. v. Southern Oregon Gas Corporation, 158 Or. 168, 74 P.2d 594, 75 P.2d 9, 114 A.L.R. 697, 706; Tripp v. Renhard, 184 Or. 622, 200 P.2d 644.[3] The giving of the required notice would have placed the burden of repair or replacement on defendant and might well have prevented this unfortunate oc-

---

made repairs or improvements upon the land or chattels of another whereby both become liable in tort to a third person.

 * * * * *

"d. *Recklessness.* The rule stated in this Section does not apply if the claimant was reckless in the use of the things or if he suspected that the supplier had not properly peformed or if he suspected that the chattels were defective."

2. ORS 75.490. " * * * if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of the promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

3. Owen v. Sears, Roebuck & Co., 9 Cir., 1959, 273 F.2d 140.

currence. Nichols v. Bellavista Farms, Inc., D.C.Or.1960, 186 F.Supp. 594.

My memorandum findings and this opinion shall stand as my findings of fact and conclusions of law. Plaintiffs' complaint and this cause are dismissed and judgment shall be entered in favor of defendant and against plaintiffs.