Angelus A. WHITE, as Administratrix of the Estate of Charles J. White, Deceased, Plaintiff,

v.

TRANS WORLD AIRLINES, INC., and the United States of America, Defendants and Third Party Plaintiffs,

v.

EASTERN AIRLINES, INC., Third Party Defendant.

Roger I. HOLT, Jr. and Patricia Skarada Hartman, Plaintiffs,

v.

TRANS WORLD AIRLINES, INC., Defendant.

UNITED STATES of America, Defendant and Third Party Plaintiff,

v.

EASTERN AIRLINES, INC., Third Party Defendant.

Nos. 66 Civ. 4045, 67 Civ. 4505.

United States District Court, S. D. New York.

Dec. 16, 1970.

Theodore E. Wolcott, New York City, for plaintiffs.

Whitney N. Seymour, Jr., U. S. Atty., S. D. N. Y. by Patricia M. Hynes and Yale Rosenberg, Asst. U. S. Attys., for the United States.

## OPINION

TYLER, District Judge.

This action arose from a mid-air collision between Eastern Airlines Flight 853 (EAL 853), and Trans World Airlines Flight 42 (TWA 42) over Carmel, New York on December 4, 1965. Plaintiff, Angelus A. White, seeks damages for the wrongful death and personal injury of her decedent, Charles A. White, captain of EAL 853 against TWA and the United States. Her suit was consolidated by order of this court, dated November 20, 1970, with that of Roger I. Holt, co-pilot, and Patricia Skarada Hartman, stewardess aboard the EAL 853 craft.[1] Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332(a) (1). The claim against TWA was tried to a jury which on December 4, 1970 found for defendant, TWA. In answer to special interrogatories put by the court, the jury found neither TWA nor plaintiffs Holt and White's decedent negligent. Accordingly, the case against TWA was dismissed.

This memorandum treats the question of liability of the codefendant, the United States of America, under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) et seq., pursuant to which the court must make independent findings of fact and conclusions of law. 28 U.S.C. § 2402. The United States' alleged liability is premised upon a claim that the Air Traffic Controllers, employees of the Federal Aviation Administration (FAA), were negligent in the control and information services rendered to the two aircraft. In light of the evidence adduced at trial and the governing law and regulations, the claim against the United States is dismissed for failure to prove that negligent performance or design of the Air Traffic Control (ATC) system was a contributing cause of the collision here in question.

The facts relevant to the claim against the United States are found as follows. Both EAL 853, a Lockheed Constellation en route from Boston to Newark Airport, and TWA 42, a Boeing 707 en route from San Francisco to New York's John F. Kennedy Airport, were operating under Instrument Flight Rules (IFR) in controlled airspace. Air traffic control services were provided by the ATC New York Center located at MacArthur Airport, Ronkonkoma, Long Island. The airspace controlled by the New York Center was divided into approximately 35 geographical sectors, each sector manned by a team of air traffic controllers. The two controllers responsible for sector 8 monitored EAL 853 and TWA 42 by following "blips" of light, identified to the respective craft and appearing upon their two-dimensional radarscope at ten-second intervals. Both controllers testified to their early awareness that the two flights were on a converging course and that cloud banks in the Carmel vicinity topped at approximately 10,500 feet. Soon after each craft had passed into their jurisdiction, radio contact was established. First EAL 853 reported to the controller for the eastern portion of sector 8 that it was maintaining the altitude of 10,000 feet assigned to it by the Boston ATC Center. Thereafter, TWA 42 reported to the second controller, handling sector 8's western half. Cognizant that EAL 853 was at 10,000 feet, he assigned TWA to 11,000 feet, thereby allowing the standard vertical separation of 1,000 feet. In these reports, the pilots confirmed at their assigned altitudes. Prior to the collision no further communication between ATC and the two flight crews was expected until they reached the Carmel Vortac, the next compulsory reporting station along their respective routes. Neither crew requested special weather or traffic advisories.

Deviation by the aircraft from their assigned altitudes was not independently ascertainable by the controller since the

---

1. A third suit against TWA as the sole defendant by former stewardess Kathryn DePue Ehrhorn, 68 Civ. 916, was also consolidated for trial and resolved by the jury in favor of TWA.

radarscope did not provide information as to their altitude. Thus, the possibility that the two blips might merge on the screen in the vicinity of the Carmel Vortac, a major air traffic intersection, did not portend collision since a 1,000 foot vertical clearance was assumed. Accordingly, the controller did not inform either craft of the other's approach.

The flight recorder carried by TWA 42 established that the collision occurred slightly above 11,000 feet and that prior thereto, TWA had been maintaining its assigned altitude. Further details of the collision are irrelevant to the conclusion that ATC was in no way remiss in the performance of its duties toward the two craft.

■■■ Plaintiffs urge that the controllers were negligent in (1) providing only a 1,000 foot vertical separation between the two aircraft; and (2) failing to inform the respective crews of the approach and proximity of the other craft.[2] Under the governing New York law,[3] it is not enough to intimate that had the air traffic controllers acted otherwise, the collision might have been avoided. Liability must be premised upon failure to discharge a legal duty owed to the injured party. Kimbar v. Estis, 1 N.Y.2d 399, 405, 153 N.Y.S.2d 197, 135 N.E.2d 708 (1956). The Air Traffic Control Procedures Manual (ATC Manual), promulgated by the FAA, sets forth the duties of the controllers in respect to services to controlled aircraft. Plaintiffs must show either that the responsible controller failed to abide by the regulations or that the regulations are so inadequate to as-

sure safe flight that supplementary services should have been provided. Since plaintiffs' proof fails, it is unnecessary to treat herein the question of contributory negligence of the EAL pilots.

First, it is uncontested that the two aircraft were properly assigned to and confirmed at altitudes separated by 1,000 feet as required by the ATC Manual § 221.1, cf. Sawyer v. United States, 297 F.Supp. 324, 328, 332 (E.D.N.Y. 1969) promulgated pursuant to section 307(c) of the Federal Aviation Act of 1958, 49 U.S.C. § 1348(c). Nothing in the record suggests that such vertical separation is inadequate under the normal flight conditions here. Indeed, plaintiffs' own expert did not dispute the sufficiency of this FAA regulation. Thus, ATC fulfilled its duty to the aircraft respecting the proper assignment of clearances.

The contention that ATC had a duty to inform each crew of the other's course and position is based upon section 350 et seq. of the ATC Manual designated "Additional Services". One of these is "Traffic Information", defined in the Manual. as follows:

> "Information on any aircraft observed on the radar scope which in the judgment of the controller appears to constitute a hazard to the operation of an aircraft being controlled. § 121.1."

The 1,000 feet vertical separation is by design and definition safe clearance under normal IFR conditions, which certainly prevailed in the area and on the day in question. The pilot reports led the controllers to assume that the stand-

---

**2.** A third ground, failure to provide the two flights with the same altimeter settings, also appears in plaintiffs' papers, but no evidence was introduced relevant to this point by plaintiffs at trial. Since the asserted effect of the different settings—a 65 foot difference in vertical separation—is virtually *de minimis,* no further consideration is necessary.

**3.** In actions under the Federal Tort Claims Act, the liability of the United States is to be determined "in accordance with the

law of the place where the [allegedly tortious] act or omission occurred" 28 U.S.C. § 1346(b), including that jurisdiction's conflict-of-law rules. Richards v. United States, 369 U.S. 1, 10–15, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Since it was the New York ATC Center that was purportedly negligent, the law of New York governs. Under New York law, the law of the place of the tort governs the issue of liability. Babcock v. Jackson, 12 N.Y.2d 473, 483, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).

ard clearance was being maintained, as required by the General Operating and Flight Rules, 14 C.F.R. §§ 91.75, 91.121.[4] No hazard was, therefore, apparent to the controllers since they had no way of knowing that EAL 853, at some point prior to the collision, apparently departed from its assigned altitude.

 Moreover, the design of the ATC system warranted the controllers' belief that the aircraft were piloted in strict accord with their directions, given that the provision of traffic information is discretionary and depends in part upon conditions at the ATC Center unknown to the pilot.[5] Whereas there may well be circumstances wherein the discretionary failure to provide traffic advisories is actionable negligence, this is not such a case. Compare cases cited in Winn and Douglass, "Air Traffic Control: Hidden Danger in the Clear Blue Skies", 34 J. of Law & Commerce 255 (1968). The very fact that these aircraft were approaching the Carmel Vortac, a heavily traveled intersection should have been sufficient notice to the respective pilots of the likelihood of converging air traffic, and, therefore, of the exigency of absolute adherence to assigned altitudes. Under these circumstances, ATC had no duty to notify the aircraft of the other's approach.

The claim against the United States of America is dismissed for failure to prove the requisite breach of duty. Accordingly, the government's third-party claim against EAL and cross-claim against TWA are also dismissed by consent.

It is so ordered.

---

4. § 91.75. Compliance with ATC clearances and instructions.

(a) When an ATC clearance has been obtained, no pilot in command may deviate from that clearance, except in an emergency, unless he obtains an amended clearance.

(b) Except in an emergency, no person may, in an area in which air traffic control is exercised, operate an aircraft contrary to an ATC clearance.

§ 91.121. IFR cruising altitude or flight level.

(a) In controlled airspace. Each person operating an aircraft under IFR in level cruising flight in controlled airspace shall maintain the altitude or flight level assigned that aircraft by ATC.

5. § 351.1. NOTE: The provision of these additional services is not mandatory. Many factors (such as limitations of the radar, volume of traffic, controller workload, and communications frequency congestion) could prevent the controller from providing them. The controller possesses complete discretion for determining whether he is able to provide or continue to provide these services in a specific case. His reason against providing or continuing to provide the services in a particular case is not subject to question by the pilot nor need it be communicated to him. The provision of these additional services depends upon whether the controller believes he is in a position to provide them.