Royal C. COLDITZ et al., Plaintiffs,

v.

EASTERN AIRLINES, INC. and Trans
World Airlines, Inc., Defendants.

No. 68 Civ. 4745.

United States District Court,
S. D. New York.

June 3, 1971.

Phillips, Nizer, Benjamin, Krim &
Ballon, Theodore H. Friedman, New York
City, for plaintiffs.

Bigham, Englar, Jones & Houston, by
John J. Martin, New York City, for
defendant Eastern Airlines, Inc.

Chadbourne, Parke, Whiteside & Wolff
by Paul G. Pennoyer, Jr., New York City,
for defendant Trans World Airlines, Inc.

OPINION

TYLER, District Judge.

Plaintiffs, passengers on Eastern Air-
lines Flight 853 (EAL 853) which col-
lided with Trans World Airlines Flight
42 (TWA 42) over Carmel, New York,
on December 4, 1965, seek damages for
personal injuries from the two airline
companies responsible for the colliding
aircraft. Jurisdiction is premised on

diversity of citizenship, the amount in controversy exceeding $10,000 as to each of the three plaintiffs. 28 U.S.C. § 1332 (a) (1).

The trial of the case, on December 21–22, 1970, resulted in a directed verdict in favor of TWA and against EAL on the issue of liability and a jury verdict awarding damages in the sums of $25,000 to plaintiff Ghisalberti, $20,810 to plaintiff Miele, and $15,000 to plaintiff Colditz.

The primary purpose of this memorandum is to treat two novel issues raised in pre- and post-trial motions, namely, the applicability of the doctrine of *res ipsa loquitur* to this mid-air collision; and (2) the appropriateness of both defendants' pleas of collateral estoppel on the liability issue based on the jury verdict in the companion case of White v. Trans World Airlines, tried before the undersigned with a jury. See White v. Trans World Airlines, 320 F.Supp. 655 (S.D.N.Y.1970). Defendant EAL's post-trial motions to set aside or reduce the verdicts will also be treated herein.

## I. *Res Ipsa Loquitur*

■ At a pre-trial hearing, the undersigned ruled that plaintiffs' counsel could rely on the doctrine of *res ipsa loquitur* in the presentation of his case to the jury. Three essential conditions must be satisfied to permit invocation of the doctrine:

"(1). The accident must be one that ordinarily would not occur in the ab-

sence of negligence; or, as it is sometimes put, the instrumentality causing injury must be such that no injury would ordinarily result from its use unless there was negligent construction, inspection or use; (2) both inspection and use must have been at the time of the injury in defendants' control; (3) the injurious occurrence or condition must have happened irrespective of any voluntary action on plaintiffs' part." [1]

As to the requirement that the accident be one not likely to occur without negligence, it is settled New York law, the state law applicable here, that negligence may be inferred from the happening of an aircraft accident. Citrola v. Eastern Airlines, Inc., 264 F.2d 815, 817 (2d Cir. 1959); Lobel v. American Airlines, 192 F.2d 217 (2d Cir. 1951), cert. denied 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703 (1952); Rogow v. United States, 173 F.Supp. 547, 556 (S.D.N.Y.1959). Although these cases concerned single craft crashes, the doctrine has more recently been applied to mid-air collisions. O'Connor v. United States, 251 F.2d 939 (2d Cir. 1958). Given the Federal Aviation Administration's (FAA) elaborate system of Air Traffic Control, to which these two aircraft were subject, the probability that this mid-air collision was an unavoidable accident is *de minimis.* Finally, since the nature of this accident justifies an inference of negligence, the absence of a common carrier-passenger relationship is irrelevant.[2]

1. 2 Harper & James, The Law of Torts, § 19.6 p. .1081. (footnote omitted). See also Prosser, Torts (3 ed.) § .39, p. 218 cited in Corcoran v. Banner Super Market, Inc., 19 N.Y.2d 425, 280 N.Y.S.2d 385, 227 N.E.2d 304 (1967).

2. Defendant TWA's contention that invocation of the doctrine must be predicated upon the existence of a relationship calling for a higher standard of care, such as that of common carrier and passenger, was rejected early by the New York Court of Appeals, Griffen v. Manice, 166 N.Y. 188, 192–193, 59 N.E. 925, and more recently in a case involving an airplane crash where nine of ten plaintiffs were bystanders. Abbott v. Page Airways,

Inc., 23 N.Y.2d 502, 297 N.Y.S.2d 713, 245 N.Y.S.2d 388 (1969). See also Rose v. Stephens & Condit Transpt. Co., 11 F. 438 (S.D.N.Y.1882), 2 Harper & James, *supra* § 19.6 p. 1084. The cases relied on by TWA stand for the converse proposition, namely, that the existence of a relationship requiring special care may permit an inference of negligence where the facts of the accident are equivocal. Plumb v. Richmond Light & R.R. Co., 233 N.Y. 285, 135 N.E. 504 (1922), Loudoun v. Eighth Ave. R.R., 162 N.Y. 380, 56 N.E. 988 (1900), Lehman v. Brooklyn & Queens Transit Corp., Sup., 30 N.Y.S. 2d 716 (App.Div., 2d Dept.1941). See text at footnote 3, *infra.*

The second condition of invoking *res ipsa loquitur* is commonly referred to as the requirement that defendant have "exclusive control" over the injuring instrumentality. But the terminology, "exclusive control", overstates the principle that the greater probabilities must point to the defendant as the responsible agent. Corcoran v. Banner Super Market, Inc., *supra*, 19 N.Y.2d at 432, 280 N.Y.S.2d at 389, 227 N.E.2d at 307. See 2 Harper & James, *supra*, § 19.7, p. 1086–7. Thus, "exclusive control" has been expanded to encompass multiple defendants who are charged by law with joint responsibility for the instrumentality of injury. Schroeder v. City & County Sav. Bank, 293 N.Y. 370, 57 N.E.2d 57 (1944), Corcoran v. Banner Super Market, Inc., *supra*. *Corcoran* reflects some stretching even of the traditional concept of joint responsibility. It held *res ipsa loquitur* applicable against the owner of one of two adjacent buildings, between which was suspended a board which fell and injured plaintiff, without regard to whether the end of the board which was negligently secured or placed rested upon the defendant owner's building rather than upon that of the non-defendant owner. In addition, the notion of exclusive control has been traditionally ignored where one defendant has a relationship with plaintiff which calls for a higher standard of care, as here, the common carrier-passenger relationship between plaintiffs and EAL.[3]

Absent either a special relationship or some basis for imposing joint responsibility, the applicability of *res ipsa loquitur* against multiple defendants where there is more than one possible agent or instrumentality of negligence is a question of first impression under New York decisional law. In discussing the erosion of the "exclusive control" requirement, the *Corcoran* court cited approvingly the seminal decision in Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258 (1944), permitting the application of *res ipsa loquitur*

against the members of a surgical team in favor of a plaintiff injured during an operation. Plaintiff in that case attempted to single out neither the agent nor the particular instrumentality of injury. Though the facts did not quite mandate so holding, *Corcoran* is strong indication that the New York Court of Appeals would approve invocation of the doctrine in a case such as this one.

The two defendants herein remain the only parties arguably responsible for the accident, cf. Corcoran v. Banner Super Market, Inc., *supra*, since the Air Traffic Controllers were completely exonerated by the undersigned. White v. Trans World Airlines, *supra*, cf. Lobel v. American Airlines, *supra*, at 220–221 fn. 3. Moreover, the control system functions not only to prevent accidents but also to facilitate discovery of the responsible agent. Finally, defendant airlines were in a far better position than plaintiffs to marshall evidence explaining the accident to refute the inference that the negligence of either or both of them caused the mid-air collision. Thus, since plaintiff passengers could in no way have contributed to the accident, plaintiffs were permitted to rely on *res ipsa loquitur* in the presentation of their case, and they did so.

Having established that plaintiffs were passengers on EAL 853, which collided with TWA 42 and made an emergency landing in a field near Carmel, New York, plaintiff rested. To the surprise of the court, both defendants EAL and TWA also rested, renewing their pre-trial motions for judgment according to the *White* verdict. The reasons for denial of the pre-trial motions and also for the undersigned's directed verdict in favor of TWA will be discussed hereinafter under the heading, "Collateral Estoppel". But first it is necessary to dispose of EAL's contention that it was error for the court to direct a verdict on liability for plaintiffs as against EAL on the basis of plaintiffs' *prima facie* or *res ipsa loquitur* case.

---

3. See footnote 2, *supra*.

It is clear that under New York law, *res ipsa loquitur* is treated as a permissible inference, shifting the burden of explanation to defendant, but not a presumption of negligence, shifting the burden of proof. Century Indemnity Co. v. Arnold, 153 F.2d 531 (2d Cir.), cert. denied 328 U.S. 854, 66 S.Ct. 1346, 90 L.Ed. 1626 (1946), Foltis v. City of New York, 287 N.Y. 108, 38 N.E.2d 455 (1941) quoting with approval Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 57 L.Ed. 815 (1914). In the normal case, it is for the jury to determine whether the inference is warranted, even though defendant presents no explanation of the accident. But, even the *Foltis* court, which squarely overruled prior authority that the court may direct a verdict in these circumstances, left open the possibility that "(t)here may be cases where the *prima facie* proof is so convincing that the inference of negligence arising therefrom is inescapable if not rebutted by other evidence." At 121, 38 N.E.2d at 462.

Though the cases are few where the inference of negligence is virtually mandated by the circumstances, it may well be that this is such a case, given the high probability in properly controlled airspace of either operational negligence or defective functioning of the aircraft equipment for which the carrier as well as the manufacturer is held strictly liable. Cf. Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963). More importantly, however, it would be a pointless exercise to rely on the black letter of the law in a case such as this, where the judge, who directed the verdict, had in the *White* trial the benefit of evidence on the very issues of liability here clothed for the jury in the mysterious garb of *res ipsa loquitur*. Notwithstanding the jury's finding in *White* that the EAL pilots were not negligent,[4] the proof totally failed to refute the overwhelming circumstantial evidence that EAL 853 negligently departed from its assigned altitude prior to the collision. I so indicated in White v. Trans World Airlines, *supra*, at 657. Given my knowledge and view of the facts, made explicit in *White*, EAL's failure to offer rebuttal evidence in this case mandated a directed verdict against it.

## II. *Collateral Estoppel*

In White v. Trans World Airlines, *supra*, plaintiffs were the EAL 853 captain's administratrix, the co-pilot and two stewardesses. Defendants were TWA and the United States representing the FAA and the Air Traffic Controllers. Since plaintiffs had already been compensated by EAL pursuant to their employment contracts, EAL was involved in that trial only as third-party defendant, impleaded by the United States. Although present throughout the trial and certainly not barred from full participation therein, EAL's counsel took no active role in the proceedings.

The facts of the mid-air collision at issue were fully litigated by the active parties and the jury returned a verdict for TWA. By answers to two special interrogatories, the jury reported finding no negligence on the part of either TWA or the EAL pilots. In a subsequent opinion, the undersigned absolved the United States of liability and dismissed its third-party complaint against EAL. White v. Trans World Airlines, *supra*.

Prior to trial of the instant case, defendants moved for judgment according to the *White* verdict and special answers. Their motions were denied. While recognizing the rule that a plea of collateral estoppel is not available *against* one who was neither party nor privy in the original action, Schwartz v. Public Admin. of Co. of Bronx, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969), defendants sought exception on the ground that plaintiffs might have consolidated their cause with that of the EAL crew. This contention is without

---

4. See p. 15 *infra* for discussion of rejection of that special finding as collateral estoppel in this case.

factual basis since the motion to consolidate was denied by the undersigned. It is also without legal merit. Nothing in *Schwartz* or its progeny supports the proposition that failure or refusal to consolidate abrogates plaintiffs' right to a full and fair opportunity to litigate their claims. On the contrary, in *Schwartz*, it was precisely because plaintiffs' position as codefendants in the first action was sufficiently adversarial to afford such an opportunity that they were held estopped, notwithstanding their failure to interpose personal claims in the prior litigation. *Supra* at 71–74, 298 N.Y.S.2d 955, 246 N.E.2d 725.

Defendants' motions for judgment according to the *White* verdict were renewed at the close of plaintiffs' case and denied by the undersigned, this time on the theory that *res ipsa loquitur* entitled these plaintiffs to whatever advantages might ensue from each codefendant's attempts to implicate the other. When defendants rested without offering evidence, the motions for directed dismissals were once again renewed and finally ripe for decision. TWA's motion was granted since no evidence was adduced at this trial to contradict the jury verdict in *White*. Though EAL's defensive position was identical to TWA's in the instant case, the *White* verdict does not likewise support EAL's plea of collateral estoppel.

█ While the effect of *res judicata* is to conclude the parties not only as to issues actually litigated but also as to material issues which might have been raised in the context of the prior litigation, the effect of collateral estoppel is narrower. The requirement that an issue of fact or law be necessarily determined in the prior litigation is a condition so fundamental to the plea of collateral estoppel that it is rarely in question. See Commr. of State Insur. Fund v. Low, 285 App.Div. 525, 138 N.Y. S.2d 437, 285 App.Div. 525 (3d Dept. 1955) citing Restatement of Law of Judgments § 68, pp. 293, 309 (1942). It is settled New York law that issues decided by the court or jury which are not essential to the judgment itself may be relitigated. Flynn v. State, 53 Misc.2d 929, 280 N.Y.S.2d 512, (Sup.Ct.1967) citing Rudd v. Cornell, 171 N.Y. 114, 127, 63 N.E. 823 (1902), cf. Mandracchia v. Russo, 53 Misc.2d 1018, 280 N.Y.S.2d 429 (Sup.Ct.1967), Bannon v. Bannon, 270 N.Y. 484, 1 N.E.2d 975 (1936). In Rudd v. Cornell, *supra*, a decision which remains undisturbed by subsequent opinions, the New York Court of Appeals expounded the basic principle:

"A judgment is conclusive upon the parties only in respect to the grounds covered by it and the facts necessary to uphold it, and although a decree, in express terms professes to affirm a particular fact, yet, if that fact was immaterial to the issue and the controversy did not turn upon it, the decree will not conclude the parties in reference to such fact. (People ex rel. Reilly v. Johnson, 38 N.Y. 63). A judgment does not operate as an estoppel in a subsequent action between the parties as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided. It is final only as to such facts as are litigated and decided, which have such a relation to the issue that their determination was necessary to the determination of that issue. (House v. Lockwood, 137 N.Y. 259, 268, 33 N.E. 595)." At 128, 63 N.E. at 828.

█ Thus, assuming the jury's special answer, exonerating the EAL crew of contributory negligence, to be incorporated in the *White* judgment since not specifically excluded, it is not collateral estoppel on the issue of EAL's liability here, because in *White* it was rendered superfluous by the jury's determination of no negligence on the part of TWA. The soundness of the rule is particularly illustrated in this case, given the likely reluctance of a jury to charge individual plaintiffs with that negligence from which flowed several deaths and considerable injury. A verdict apparently influenced by sympathy for the parties charged should not be given conclusive effect in subsequent litigation. Cf. Schwartz v. Public Admin. of Co. of Bronx, *supra*, 298 N.Y.S.2d at 961, 246 N.E.2d at 729. Indeed, had any of the

litigants in *White* had an interest in moving for judgment notwithstanding the verdict as to EAL, the undersigned would have granted such motion; the evidence, although circumstantial, pointed unequivocally to operational negligence on the part of the EAL pilots, as suggested in my decision in White v. Trans World Airlines, *supra*, at 657. In view of the law and the facts, EAL's plea for judgment according to the *White* verdict is denied.

## III. *Damages*

Defendant EAL asks this court to reduce the damages awarded by the jury to the three plaintiffs in this case or to grant a new trial on damages. The evidence of burns and back problems, even assuming no permanent disability, together with the not incredible testimony of plaintiffs and their relatives respecting the emotional shock and stress experienced during the accident and thereafter reasonably supports these ample, though not excessive or shocking, verdicts.

In summary, EAL's post-trial motions are all denied. Judgment should be entered in the sums of $15,000 for Colditz, $20,810 for Miele and $25,000 for Ghisalberti.