**DISTRICT OF COLUMBIA, Plaintiff,**

v.

**C. F. & B., INC., et al., Defendants.**

**Civ. A. No. 1579–73.**

United States District Court, District of Columbia.

Nov. 21, 1977.

As Amended Nov. 23, 1977.

Robert K. Chernikoff, Asst. Corp. Counsel, Washington, D. C., for plaintiff.

Lee T. Ellis, Jr., Edward C. Donahue, Rockville, Md., John A. Beck, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

This case is before the Court[1] on the motion of the plaintiff District of Columbia for summary judgment and the cross motions of the defendants CF&B and State Construction Corporation (Joint Venture) and Glen Falls Insurance Company (Glen Falls)[2] respectively.

The underlying material facts are not in dispute, and accordingly the case is ripe for disposition by way of summary judgment. The material undisputed facts follow:

On February 25, 1970, plaintiff District of Columbia, entered into D.C. Contract No. 20579 (the Contract) with the Joint Venture for sewer construction work. The clauses of the contract here in dispute were in standardized language generally employed by the District of Columbia in its construction contracts.

On February 25, 1970 Policy 06–32–88 (the bond) was entered into between Joint Venture and Glen Falls, bonding Contract 20579. The policy ran from January 1, 1970 to January 1, 1971. The indemnity provisions were devised by the District of Columbia.

On August 4, 1970, while the Joint Venture was performing the contract, an explosion occurred at the job site. Several Joint Venture employees were injured and one was killed.

In due course, such employees (or their representatives) were paid appropriate workmen's compensation insurance benefits thus insulating the Joint Venture from any further liability vis-a-vis the employees.[3]

Notwithstanding the receipt of the workmen's compensation benefits the several employees then filed suits[4] against the District of Columbia in the U. S. District Court for the District of Columbia for the injuries (and death) sustained in the August 4th accident.[5]

Thereupon the District of Columbia sent "action over" letters to the Joint Venture calling upon it to defend the suits in the U. S. District Court. The Joint Venture took no action and did not appear to defend.

The U. S. District Court jury found in favor of the employees and awarded damages in the gross amount of $376,875 against the District of Columbia. The sev-

---

1. The Court has jurisdiction by virtue of 28 U.S.C. § 1332 and Section 13–431, D.C.Code, 1967 ed. (Supp. V, 1972). The amount in controversy exceeds $10,000.

2. The record before the Court includes (i) Plaintiff's Statement of Material Facts as to Which There is No Genuine Dispute, (ii) Plaintiff's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, (iii) Defendants' oppositions thereto, (iv) Defendants' Cross Motions for Summary Judgment and Their Memoranda of Points and Authorities in Support Thereof, (v) Defendants' Statements of Material Facts as to Which There is No Genuine Dispute, (vi) Plaintiff's opposition to defendants' motions for summary judgment, and (vii) Statement of Position of District of Columbia with Respect to the Active-Passive Negligence Doctrine.

3. *See e. g., Murray v. United States*, 132 U.S. App.D.C. 91, 94, 405 F.2d 1361, 1364 (1968); *Shreve v. Hot Shoppes, Inc.*, 110 U.S.App.D.C. 268, 269, 292 F.2d 761, 762 (1961).

4. The several suits were consolidated for trial in the District Court under Civil Action No. 1194–71.

5. The Complaint was based solely upon the alleged negligence of the District; it in no way involved the Joint Venture.

eral verdicts were based upon jury interrogatories finding that the District of Columbia had breached its duty to guard Joint Venture's employees against injuries while performing inherently dangerous work.[6]

Notwithstanding that the Joint Venture was not party to the suit, and no charges against it were made in the complaint, a special interrogatory was submitted to the jury requesting it to find whether Joint Venture had failed to take reasonable care to guard against the inherent or intrinsic dangers of the work in which its employees were engaged.[7] The jury answered this interrogatory in the affirmative.

On appeal, the U. S. Court of Appeals affirmed the U. S. District Court judgments, holding that the District of Columbia had breached duties which were nondelegable. *Lindler v. District of Columbia*, 164 U.S.App.D.C. 35, 40, 502 F.2d 495, 500 (1974).

The District of Columbia paid the several judgments totaling $376,875 in full and thereupon brought this action against the Joint Venture and Glen Falls to recover the amount of the judgments (plus attorneys fees, and costs) alleging that it is entitled thereto under the indemnity provisions of the contract and performance bond, construed in the light of the jury response to the special interrogatory 1(b).[8] *See supra*, note 6.

6. The jury interrogatories are recited in *Lindler v. District of Columbia*, 164 U.S.App.D.C. 35, 37, 502 F.2d 495, 497 n. 3 (1974).

7. The special interrogatory (1)(b) reads as follows:
   ". . . did the company employing the plaintiffs fail to take reasonable care to guard against the inherent or intrinsic dangers?"

8. Plaintiff has stipulated that it relies solely on the terms of Contract No. 20579 and the Performance Bond (Policy 06–32–88) and the judgment and jury's verdict (special interrogatories) in the consolidated trial of the employees cases. *See* Pretrial proceedings at 28; "Statement of Position of District of Columbia filed November 1, 1977. An argument previously made and based upon the "active-passive" negligence theory was abandoned. *See* Statement of Position of District of Columbia with respect to this issue.

Article 10 of the contract reads in pertinent part as follows:[9]

"Article 10. Permits and Responsibility for Work—The contractor shall . . . be responsible for all injuries to persons and damages to property or premises that occur as a result of any act or omission of the contractor in connection with the prosecution of the work . . ."

The bond[10] states that the principal
". . . shall save harmless and indemnify the government from any and all claims, delays, suits, costs, charges, damages, counsel fees, judgment, and decrees to which said government may be subjected at any time . . . on account of any injuries to persons or damage to property or premises that occur as a result of any act or omission of the Principal in connection with the prosecution of the work and shall pay the same, then this obligation to be void, otherwise to remain in full force and virtue."

Defendants assert that the quoted language of the bond and Article 10[11] requires them to indemnify the District only for losses sustained as a result of negligence on the part of the Joint Venture; that the special finding by the *Lindler* jury is not binding upon them; and hence no negligence on their part has been established.

If, as defendants do, we disregard the special finding of the *Lindler* jury we would

9. In the contract, the term "Contractor" means the Joint Venture.

10. In the bond, the term "government" means the government of the District of Columbia and the term "Principal" means the Joint Venture.

11. Plaintiff also relies on Article 21 of the Contract which provides:
    "Article 21. Patents.—The contractor shall hold and save the District, its officers, agents, servants, and employees harmless from liability of any nature or kind, including costs and expenses, for or on account of any patented or unpatented invention, article, process, or appliance, manufactured or used in the performance of this contract, including their use by the District, unless otherwise specifically stipulated in this contract."
    We agree with defendants that Article 21 is not relevant to the issues in this case.

agree that the case would be governed by *United States v. Seckinger*, 397 U.S. 203, 211, 215, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970).

In *Seckinger*, the Court was required to interpret a standard form government construction contract that required it to be indemnified for all losses "that occur as a result of [the contractor's] fault or negligence in connection with the prosecution of the work." The Court held that such contractual language could not be stretched to encompass indemnification for the government's own negligence. *United States v. Seckinger, supra*, 397 U.S. at 212, 213, 90 S.Ct. 880.

We note that the language in the *Seckinger* contract covering losses resulting from the contractor's "fault or negligence" is virtually indistinguishable from the defendant's agreement here to indemnify plaintiff for all losses resulting from defendant Joint Venture's "act(s) or omission(s)." [12] Accordingly, absent any additional consideration we would rely upon it as dispositive.

However the plaintiff's reliance on the *Lindler* interrogatory casts the case in a different light and requires us to determine its effect. For it is the contention of the plaintiff that notwithstanding *Seckinger*,[13] defendant Joint Venture is bound by the finding of the *Lindler* jury and that the finding brings the District of Columbia under the coverage of the bond and contract.

Plaintiff's contention raises two issues, *viz.*, (1) whether the defendant Joint Venture had a duty to assume plaintiff's defense in the *Lindler* case and (2) assuming such obligation did exist, was the special interrogatory finding of negligence on the part of the Joint Venture necessary to the judgment in the *Lindler* case.

In support of its contention that defendant Joint Venture had a duty to assume the defense in the *Lindler* case, plaintiff relies upon *Washington Gas Light v. District of Columbia*, 161 U.S. 316, 330, 16 S.Ct. 564, 40 L.Ed. 712 (1896). That case states the general rule that when a person is responsible over to another either by operation of law or by express contract and has been given notice of and an opportunity to defend a suit brought against his indemnitee, a judgment rendered in such an action, as well as the resolution of all issues material to such judgment, is conclusive on both parties in a subsequent suit for indemnity, *accord, Hecht Co. v. District of Columbia*, 139 A.2d 857, 859 (D.C.Mun.App.1958). However, a mere restatement of the rule does not resolve the issue. For where, as is the case here, the parties had no contractual agreement regarding defense of possible suits, the existence *vel non* of a duty to defend is critical. *Accord, Humble Oil and Refining Co. v. Philadelphia Ship Maintenance Co.*, 444 F.2d 727, 734 (3rd Cir. 1971).

**12.** *Compare Lesmark Inc. v. Pryce*, 118 U.S. App.D.C. 194, 195, 334 F.2d 942, 943 (1964); *Moses-Ecco Co. v. Roscoe-Ajax Corp.*, 115 U.S. App.D.C. 366, 369, 320 F.2d 685, 688 (1963); *District of Columbia v. General Heating Engineering Co.*, D.C.Mun.App., 168 A.2d 903, 904 (1961); *Princemont Construction Corp. v. Baltimore & Ohio R. Co.*, D.C.Mun.App., 131 A.2d 877 (1957) (cases holding language sufficiently broad to indemnify indemnitee for its own negligence) *with Kelley v. General Telephone Co. of the Southwest*, 485 F.2d 1315, 1323–1327 (5th Cir. 1973) (indemnitor agreeing to indemnify for losses "growing out of or based upon or resulting from anything [it] . . . may do or omit to do . . ." held not to include losses arising from indemnitee's own negligence under Texas law. *Capozziello v. Brasileiro*, 443 F.2d 1155, 1158 (2d Cir. 1971) (dicta indicating that contractor who agrees to indemnify for losses caused by its own "acts or omissions" "clearly limits [its] liability to injuries

caused by its own negligence"); *Gorsalitz v. Olin Mathieson Chemical Co.*, 429 F.2d 1033, 1048, 1049 (5th Cir. 1970) (contractor who agreed to indemnify owner for losses "occasioned by acts or omissions, whether or not negligent" held not liable for losses arising from indemnitee's own negligence.)

**13.** In *Seckinger* the Court was considering an indemnity suit brought by the United States against one of its contractors. In the original suit brought by the contractor's employees against the United States, the district court found *inter alia* that the accident resulted solely from its negligence. The Court in *Seckinger* specifically declined to consider what effect, if any, that finding of negligence would have in the suit for indemnity. *See United States v. Seckinger, supra*, 397 U.S. at 205 n. 4, 90 S.Ct. 880.

As the Court noted in *Crawford v. Pope & Talbot, Inc.*, 206 F.2d 784, 795 (3rd Cir. 1953), "[Defendant] may or may not be under a duty to the indemnitee to defend the action against the latter and if he is under no such duty he commits no breach by failing to defend."

In determining whether the duty exists, some courts have formulated the test that if the facts actually or constructively proffered to it demonstrate that liability will eventually fall on the indemnitor, the indemnitor is under a duty to defend. *See e. g., Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co.*, 312 F.Supp. 380, 383 (E.D.Pa.1970), *rev'd on other grounds*, 444 F.2d 727 (3rd Cir. 1971); *Siebrand v. Eyerly Aircraft Co.*, 196 F.Supp. 936, 939 (D.Or.1961). However, in view of our holding *infra* with respect to the necessity of the special interrogatory at issue to the *Lindler* judgment, we need not reach the question of the propriety of this rule or the practical difficulties of its application.[14]

■ For even if we assume *arguendo* that defendant Joint Venture had an obligation to defend plaintiff in the *Lindler* case, before the special interrogatory on which plaintiff relies could be used conclusively against defendant Joint Venture, principles governing the doctrine of collateral estoppel would require that the special interrogatory must have been necessary and essential to the resulting judgment. 1B J. Moore, Federal Practice ¶ 0.433[1]; *See Stebbins v. Keystone Insurance Co.*, 156 U.S.App.D.C. 326, 331, 481 F.2d 501, 506 (1973); *Eastern Foundation Co. v. Creswell*, 154 U.S.App.D.C. 240, 243–244, 475 F.2d 351, 354–355 (1973).

In determining whether the special interrogatory in *Lindler* was necessary and essential to the judgment in that case, it is helpful to review other sources which have considered the question in similar settings.

*Siebrand v. Eyerly Aircraft Co.*, 196 F.Supp. 936 (D.Or.1961) involved an indemnity suit by a circus owner against the manufacturer of a circus ride for recovery of a judgment the owner had paid resulting from injuries sustained because of a malfunction in the ride. The manufacturer had been tendered, but had refused to assume the defense in the initial suit in which the jury, by interrogatory, had found that the accident was caused by a defect in construction by the manufacturer. The Court in *Siebrand* held that the special interrogatory was not dispositive in establishing the manufacturer's negligence with respect to the suit for indemnity on the grounds *inter alia* that the interrogatory did not require the jury to find that the defect in the manufacture of the ride was the sole cause of injury and that many issues presented in the indemnity suit were not involved in the original suit.

*Colditz v. Eastern Airlines, Inc.*, 329 F.Supp. 691 (S.D.N.Y.1971) is similar. In 1965 there was a collision between aircraft of TWA and Eastern Airlines (EAL). Two law suits followed: (1) a suit by EAL crew members against TWA (*White*) and (2) a suit by EAL passengers against EAL (*Colditz*). *White* was tried first. In it TWA asserted contributory negligence on the part of EAL. Answers to special interrogatories submitted to the jury resulted in a finding of no negligence on the part of either party. In *Colditz* which followed, the defendant EAL asserted collateral estoppel on the basis of the jury finding in the *White* suit. However, the *Colditz* Court held that the exoneration of the Eastern pilots in the *White* suit did not collaterally estop the plaintiffs in the *Colditz* suit because the issue of EAL's negligence in the *White* suit "was rendered superfluous by the jury's determination of no negligence on the part of TWA." *Colditz v. Eastern Airlines, supra*, 329 F.Supp. at 695.

Finally, in *Eastern Foundation Co. v. Creswell*, 154 U.S.App.D.C. 240, 475 F.2d 351 (1973) the Court was faced with an appeal of an action in which a subcontractor had been granted judgment in its suit

---

14. It has been noted that "the duty to indemnify is an evanescent and often desultory doctrine" and that its practical application is extremely difficult. *Humble Oil & Refining Co., supra*, 444 F.2d at 734.

on an excess liability policy. The judgment was based in part on the lower court's conclusion that the subcontractor had not been negligent. That conclusion, in turn, was based on a similar finding in a prior suit between the contractor and the subcontractor. The Court in *Eastern Foundation* reversed in part on the ground that the finding of no negligence by the subcontractor in the initial suit had not been necessary to the judgment, in that the judgment establishing the subcontractor's liability was based exclusively on its contract with the contractor.[15]

With these cases as background, we move to consider the issue of whether the *Lindler* interrogatory finding defendant Joint Venture negligent was necessary to the judgment against the District. We view a resolution of only the following issues to have been essential to the *Lindler* judgment, viz.

(1) Were the employees engaged in an inherently dangerous activity?

(2) Did such activity necessitate special precautions?

(3) Did the District of Columbia know or have reason to know that work was being performed in absence of special precautions?

(4) Did the District of Columbia fail to exercise reasonable care to see that such precautions were taken?[16]

▮ All of these issues were decided adversely to the District, and thus it was found that the District had breached its independent non-delegable duty to the employees. *Lindler v. District of Columbia,* supra, 164 U.S.App.D.C. at 40, 502 F.2d at 500. We are of the view that the judgment rested exclusively on these findings and that the interrogatory finding defendant Joint Venture negligent was totally unnecessary to that judgment. Thus, with respect to the District's Motion for Summary Judgment in this case, it has yet to establish that the loss it incurred in the *Lindler* case resulted from any act or omission by defendant.

However, even if we were to afford some weight to the *Lindler* interrogatory finding defendant Joint Venture negligent, or now allow plaintiff to attempt to establish such negligence, it would be precluded from recovery under the contract.

▮ This case is before the Court under diversity jurisdiction, and thus the law of the District of Columbia must control. *See Erie Railroad v. Tomkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The law of the District of Columbia does not recognize the comparative negligence doctrine. *D. C. Transit Systems, Inc. v. Garman,* 112 U.S.App.D.C. 244, 246, 301 F.2d 568, 570 (1962). Thus, even if plaintiff did establish defendant Joint Venture's negligence, plaintiff's concurrent negligence, as established by the *Lindler* judgment, would preclude it from recovering under the contract. *Accord, Cole v. Chevron Chemical Co.,* 477 F.2d 361, 368 (5th Cir. 1973).

▮ In view of our holding that under the contract plaintiff cannot recover for damages resulting either from its own negligence or from acts or omissions in which it was concurrently negligent, and that the *Lindler* judgment established plaintiff's concurrent negligence, we are constrained to and do grant defendants' motions for summary judgment, and deny plaintiff's motion.

It is so ORDERED.

---

**15.** The rationale supporting the conclusion in these decisions is that because the adjudication of the issue of negligence did not dictate the judgment it is deprived of the assurances of integrity and correctness that the judicial process affords to genuinely dispositive adjudications. 1B J. Moore, Federal Practice ¶ 0.433[5] at 3922.

**16.** These issues are reflected in the special interrogatories submitted to the *Lindler* jury. See *supra* n. 6.