THE PEOPLE OF THE STATE OF NEW YORK ex rel. WATCHTOWER BIBLE AND TRACT SOCIETY, INC., Appellant, against PERCY H. HARING et al., Constituting the Board of Assessors of Taxes of the Town of Lansing, Tompkins County, Respondents.

Third Department, November 23, 1955.

*Hayden C. Covington* for appellant.

*Armand L. Adams* and *Charles H. Newman* for respondents.

HALPERN, J. The appellant brought this proceeding to review the assessment of taxes for the year 1954 upon a farm known as Kingdom Farm in the town of Lansing, Tompkins County, New York, it being the appellant's contention that the farm was exempt from taxation under subdivision 6 of section 4 of the Tax Law as real property used exclusively for the carrying out of religious and charitable purposes.

The respondents moved to dismiss the petition under rule 107 of the Rules of Civil Practice upon the ground that the issue sought to be raised in the proceeding had been adjudicated against the appellant in a prior proceeding. It appeared that, in 1947, the appellant had brought a proceeding claiming exemption from taxation for that year and that the proceeding had been decided against the petitioner at Special Term by Justice COON (*People ex rel. Watchtower Bible & Tract Soc.* v. *Mastin,* 191 Misc. 899) and that no appeal had been taken from Justice COON's decision.

The Special Term in the present proceeding held that the allegations of the petition were insufficient to show a change of facts since the prior decision and therefore the court granted the respondents' motion and dismissed the petition, with leave to the appellant to amend. Thereafter, the appellant served an amended petition but that too was dismissed. From the judgment entered upon the order of dismissal, this appeal has been taken.

As appears from Justice COON's opinion in the prior proceeding, the facts in the case before him were as follows: The Kingdom Farm was a large farm, consisting of over 700 acres of land with numerous buildings. One building was used as a Bible School and that building, and the land upon which it stood, had been exempted from taxation without controversy. The remainder of the farm was operated in the ordinary fashion " for the production of crops, livestock and farm products generally " (p. 902). A " small and insignificant " part of the products of the farm was used as food for the students attend-

ing the Bible School. The major part of the products of the farm was shipped to Brooklyn, where it was used as food for the members of the appellant society who lived in a " large seven-story brick hotel-type building in Brooklyn " and who worked in a large publishing plant in Brooklyn operated by the appellant for the publication of " bibles, pamphlets, magazines and other literature dealing with religious subjects " (p. 900). These members of the appellant society were known as the Bethel family. The remainder of the farm products was sold to the public for cash. During the year ending August 31, 1947, the sale value of the products sold to the public was over $126,000.

Justice Coon found that the appellant was not entitled to exemption of the farm for two reasons: (1) The supplying of food to the Bethel family did not constitute an exempt use of the farm. Justice Coon reasoned that the supplying of food to the members of the society in Brooklyn was in effect " compensation for their manual services in the publishing plant and offices " (p. 903) of the society and that this did not entitle it to exemption of the farm upon which the food was produced. (2) The sale to the public was of such a large volume that it could not be regarded as merely incidental and this of itself deprived the appellant of any right to tax exemption.

In the amended petition in the present proceeding, there is no allegation of any substantial change of circumstances with respect to the first ground of Justice Coon's decision. So far as appears from the amended petition, the way in which the farm was used for the production of food for the Bethel family in 1954 was substantially the same as in 1947. In fact, the use of the farm for that purpose has increased, the number of members in the Bethel family in Brooklyn having increased from 200 to 400.

However, the amended petition does allege a substantial change of facts with respect to the second ground of the decision. The amended petition alleges that " There was no extraordinarily large amount of surplus sold or substantial sales of produce by petitioner during the taxable year involved as in the *Mastin* case " and it is further alleged: " The amount produced on the premises is used primarily to supply the table requirements of the members of the petitioner's institutions; and production for this purpose does not permit an exact and precise balance between such needs and the quantities produced resulted in an incidental surplus that was not substantial but which was small."

The Special Term held that the allegations of the amended petition, purporting to show a change of circumstances since 1947, did not constitute allegations of fact but were merely "conclusions of the pleader". We take a different view as to the sufficiency of the allegations. They seem to us to be sufficient as allegations of ultimate fact to show a change of circumstances with respect to the nature, purpose and extent of the surplus produced on the farm, which was offered for sale to the public. Concededly, the doctrine of *res judicata* does not apply if the facts alleged in the second proceeding are different from those in the first. The affidavits submitted by the respondents controvert the new allegations in the petition but, of course, if that were all that was involved, the issues could not be decided upon affidavits but they would have to be framed for trial under rule 108 of the Rules of Civil Practice or the motion to dismiss would have to be denied with leave to the respondents to set up *res judicata* as a defense in their answer (*Barker* v. *Conley*, 267 N. Y. 43).

The defect in the appellant's position on this point is, however, that the allegations showing a change of facts relate only to one of the grounds of the prior decision. Concededly, there is no allegation of a change of facts with respect to the other ground, which Justice Coon had held to be adequate in and of itself to justify the denial of the exemption of the appellant's farm.

Where the prior decision, relied upon as the basis for the defense of *res judicata,* rests upon alternative grounds, the prevailing view seems to be that the prior decision is *res judicata* as to both grounds and may be invoked to bar the relitigation of either ground (Restatement, Judgments, § 68, comment *n*; *Sheldon* v. *Edwards,* 35 N. Y. 279; *MacAffer* v. *Boston & Maine R.R.,* 268 N. Y. 400; but see comment 65 Harv. L. Rev. 820, 845).

Under this principle, the issue of whether the supplying of food to the Bethel family is an exempt use could not be relitigated and Justice Coon's decision upon that issue would have to be held to be *res judicata,* if the doctrine of *res judicata* were held to be applicable at all to issues of the kind here involved.

This brings us to the principal question in the case, whether the doctrine of *res judicata* is applicable to the granting or denial of an exemption from taxation where the right to the exemption depends upon the nature of the use of the property at the time of the proposed assessment. We should note first of all that we are here concerned with that aspect of *res judicata* which is referred to as collateral estoppel (Restatement, Judg-

ments, §§ 68–72; Scott on Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1) rather than with the effect of a former adjudication as a bar to the relitigation of the same cause of action. The assessment for one year is a separate and different cause of action from the assessment for another year. " Each annual proceeding is separate and distinct from every other " (*People ex rel. Hilton* v. *Fahrenkopf*, 279 N. Y. 49, 52–53). However, despite the fact that the causes of action are different, an issue which was actually litigated and decided in one proceeding may not be relitigated between the same parties in another proceeding. That is the substance of the doctrine of collateral estoppel. " The estoppel is limited in such circumstances to the point actually determined " (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304, 307).

It is elementary that the doctrine of collateral estoppel is not applicable unless the issue in the second proceeding is identical with that in the first. It necessarily follows from this principle that the doctrine of collateral estoppel cannot apply to a claim of charitable or religious exemption where the granting or denying of the exemption depends upon the actual use of the property at the time of the proposed assessment. An adjudication that the property was or was not used for a charitable or religious purpose during one year cannot constitute an adjudication as to whether it was used for such a purpose during another year. The issues are not the same. The issue as to each year depends upon what took place that year. It is therefore unnecessary to allege or prove a change of the facts in order to render the doctrine of collateral estoppel inapplicable to an issue of charitable or religious exemption, insofar as the exemption is dependent upon the nature of the use of the property. The parties in the new proceeding do not have to start with the former adjudication and then show a change of facts since that time; they may relitigate the entire issue *de novo*. The doctrine of collateral estoppel does not apply to issues of the type here involved at all (*Matter of Autokefalos Orthodox Spiritual Church* v. *City of Mount Vernon*, 283 App. Div. 801; *Matter of Marion Lodge No. 926 F. & A. M.*, 178 Misc. 219).

While there has been no direct decision by the Court of Appeals upon this point, the case of *People ex rel. Hilton* v. *Fahrenkopf* (279 N. Y. 49, 52, 53, *supra*) supports this conclusion. In that case, the court pointed out that " It is of the essence of an assessment that it fixes value as of a certain time " and therefore the court held that " the doctrine of *res judicata* can

have no true application to the issues of value in recurring assessment proceedings ''. The same reasoning is applicable to any issue in recurring assessment proceedings which depends upon the factual situation '' as of a certain time ''.

Indeed, there is authority in this State for the view that the doctrine of collateral estoppel does not apply to any issue in a tax case (*People ex rel. Western N. Y. & Pa. Ry. Co. v. State Bd. of Tax Comrs.,* 256 App. Div. 104, affd. 281 N. Y. 639). In the Federal courts, there has been an extensive use of the doctrine of collateral estoppel in Federal income tax cases but this use has been criticized by leading scholars. (Griswold on Res Judicata in Federal Tax Cases, 46 Yale L. J. 1320; Paul & Zimet on Res Judicata in Federal Taxation, Selected Studies in Federal Taxation [2d series] 104; Griswold, Book Review, 48 Harv. L. Rev., 1032, 1037; but see Restatement, Judgments, § 68, comment *c*, p. 299 and see Restatement, Judgments [1948 Supp.], § 70, comment *f*). The doctrine has been applied, in the Federal income tax field, chiefly to cases turning upon the construction of documents or other static facts (*Tait* v. *Western Md. Ry. Co.,* 289 U. S. 620) but even in such cases the Supreme Court has declined to apply the doctrine where there has been an intervening '' change in the legal climate '' (*Commissioner* v. *Sunnen,* 333 U. S. 591). There is, however, no need to decide in this case whether the doctrine of collateral estoppel should be applied in a tax exemption case, where the issue is one of historical fact, not subject to change, as, for example, whether the corporation owning the property was '' organized '' for charitable purposes (*Willingham* v. *Home Oil Mill,* 181 F. 2d 9, certiorari denied 340 U. S. 852). Even if we assume that the doctrine might properly be applied in a case of that type, it is clear beyond question that the doctrine is not applicable to issues of the kind here involved. In *Grandview Dairy* v. *Jones* (157 F. 2d 5, 9, certiorari denied 329 U. S. 787) the Court of Appeals of the Second Circuit distinguished the *Tait* case (*supra*) and the cases which had followed it, upon the ground that '' the prior decisions, which were held to create estoppels by judgment, were based on a historical document, such as a bond or lease, and were not, as here, determinable by conditions that might change through human intervention ''. In an earlier case, the same court had said: '' The point as to res judicata falls * * * Whether one is doing business or not * * * is not a subject which when settled as to one period remains immutable as to another. The issue is new in

each taxable year raised ". (*Stoddard* v. *Commissioner of Internal Revenue,* 141 F. 2d 76, 80).

We therefore conclude that the adverse determination in the 1947 proceeding does not bar the relitigation by the appellant of the issue of whether the supplying of food to the Bethel family is an exempt use of the property, as well as the issue with respect to the surplus sold to the public, even though there is no claim that the material facts as to the former issue are any different from those which were before the court in the prior proceeding.

Important considerations of public policy support the conclusion here reached. If the *denial* of an exemption on account of an alleged charitable or religious use is held to be *res judicata* in subsequent tax years, then the *granting* of an exemption must similarly be held to be a binding adjudication against the taxing authorities in subsequent years. It would clearly be against the public interest to foreclose the relitigation of an issue of that character by the public authorities in subsequent years merely because it had once been adversely decided with respect to a particular year. Furthermore, the situation would be unjust and intolerable if taxpayers carrying on the same kind of activities were treated differently because one of them had either been granted or denied an exemption from taxation upon the basis of a factual situation proved to have existed in an earlier year. Speaking of the doctrine of *res judicata* as sought to be applied to the classification of merchandise for customs purposes, the United States Supreme Court pointed out that, if an importer " can rely upon a conclusion in early litigation as one which is to remain final as to it, and not to be reheard in any way, while a similar importation made by another importing house may be tried and heard and a different conclusion reached, a most embarrassing situation is presented. * * * Such a result would lead to inequality in the administration of the customs law, to discrimination and to great injustice and confusion " (*United States* v. *Stone & Downer Co.,* 274 U. S. 225, 236).

It is argued by the respondents that the refusal to apply the doctrine of *res judicata* or collateral estoppel to questions of the type here under consideration will result in putting the public authorities to the expense and trouble of needless relitigation of issues which were once decided and which have not been affected by any change of facts. But the doctrine of *stare decisis* will be applicable even if it is held that the doctrine of *res judicata* is inapplicable. The essential difference between *stare*

*decisis* and *res judicata* is, of course, that the *stare decisis* doctrine is an elastic one allowing the litigant to challenge the soundness of an outstanding decision whereas, under the doctrine of *res judicata,* the decision is binding even though it is plainly wrong. " The rigidity of *res judicata* is recognized in the maxim: ' *res judicata facit ex albo negrum, ex negro album, ex curvo rectum, ex recto curvum.*' " (33 Col. L. Rev., 1404, 1413.) " The idea is that the application of the principle makes white, black; black, white; the crooked, straight; and the straight, crooked " (Paul & Zimet, *op. cit.,* 109–110).

The doctrine of *stare decisis* would seem to be an adequate deterrent against needless litigation. It is unlikely that a defeated litigant would seek to relitigate an issue merely because the law left him free to do so, if the facts remained unchanged and there was outstanding a decision of the highest court of the State with respect to an earlier year disposing of an issue of the same character. Furthermore, even if the prior decision was that of a court of first instance, from which the defeated litigant had not appealed, he would have to take cognizance of the fact that courts of co-ordinate jurisdiction would ordinarily follow the prior decision as a precedent. It is therefore unlikely that in that situation the litigant would undertake relitigation of an issue similar to the one already decided unless his failure to appeal in the prior proceeding was due to reasons peculiar to that proceeding and he desired to take the issue to an appellate court for the first time in the new proceeding. We therefore need have no fear of a flood of needless relitigation of similar issues because of the holding that the litigants are subject to the flexible doctrine of *stare decisis* then to the rigid doctrine of *res judicata.*

We need hardly emphasize that we are here dealing only with the question of *res judicata* and not with the merits of the alleged claim to exemption and nothing in this opinion is intended to indicate that we either agree or disagree with the decision of Justice Coon on the merits in the earlier proceeding. All that we hold is that the appellant is entitled to litigate, as to the year 1954, the question of whether the use of the property was an exempt use, notwithstanding the adverse decision of 1947.

The order and judgment appealed from should be reversed, with costs, and the motion to dismiss the petition should be denied, with $10 costs.

Foster, P. J., Bergan and Zeller, JJ., concur; Coon, J., taking no part.

Order and judgment reversed, with costs, and the motion to dismiss denied, with $10 costs.