**EASTERN FOUNDATION COMPANY, INC.**

v.

**Jack Norman CRESWELL et al., Appellants.**

No. 71-1941.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 15, 1972.

Decided Jan. 29, 1973.

Richard W. Galiher, Jr., Washington, D. C., with whom William H. Clarke, Frank J. Martell, William J. Donnelly, Jr., and Richard W. Galiher, Washington, D. C., were on the brief, for appellant.

Branko Stupar, Washington, D. C., for appellee.

Before BAZELON, Chief Judge, LEVENTHAL, Circuit Judge, and HARRISON L. WINTER,* Circuit Judge for the Fourth Circuit.

LEVENTHAL, Circuit Judge:

In this case, in which Eastern Foundation Co. (Appellee) brought an action under the terms of an excess liability policy that it purchased from Appellants, underwriting members of Lloyd's of London, the issue is the binding effect, by way of collateral estoppel, of a prior litigation in which Eastern was a party but Appellants were not.

The coverage terms of the primary insurer, Hartford Accident and Indemnity, written in the amount of $25,000, were incorporated by reference into Appellants' excess liability policy, which extended basic coverage to $1,000,000.

The insurance was obtained by Eastern in connection with its work as a subcontractor to provide the sheeting and shoring for a building being constructed by George A. Fuller Company as general contractor. Eastern completed installation of the sheeting and shoring on May 14, 1964, and left the job site. On May 21, 1964, the eastern wall

---

* Sitting by designation pursuant to Title 28, U.S.C. § 291(a).

of the excavation caved in. Eastern repaired the damaged portion at a cost of $26,407.75 and sued Fuller, in Civil Action 295–65, to recover that amount as damages (quantum meruit), alleging that Fuller's negligence caused the collapse. Fuller claimed against Eastern —by setoff (from money withheld, though due under the sheeting and shoring contract) and by counterclaim—for expenses to Fuller, occasioned by the collapse, in re-excavating and repairing damage to work done by others. Fuller claimed that Eastern was negligent and, in the alternative, that Eastern was contractually liable to replace the shoring regardless of negligence. There were other parties to the action, each alleging various causes for the collapse. Although it resisted being impleaded as third party defendant, Hartford actively defended Eastern during the litigation.

In Civil Action 295–65 District Judge Hart made findings of fact that included the following: The collapse of the sheeting and shoring was proximately caused by a leak or rupture of sewer or water mains, causing hydrostatic pressure to build up that exceeded the design load of the sheeting and shoring. It has not been proved by a preponderance of evidence (a) that Eastern was negligent or deviated from specifications, (b) that Fuller was responsible, either by its pumping or its removal of the berm on the side of the excavation, for the breaking of the pipes or the collapse of the shoring; or (c) that any of the other parties (doing blasting; or digging; or running heavy machinery, etc.) was responsible, as had been claimed. Although Eastern had left the site, its work had not been accepted by the Contractor. Under Eastern's contract with Fuller, Eastern was "obligated to repair and replace all loss and damage of any kind which might happen to the Work at any time prior to final completion and acceptance thereof from any cause whatsoever." "Eastern also assumed the risk

. . . to indemnify Fuller for all damages and expense, which Fuller was obligated to pay, arising out of or in consequence of the collapse of the sheeting and shoring from whatever cause." Prior to commencement of work, Eastern furnished certificates from Hartford and Lloyd's of London "that it had obtained insurance against contractual liability as required by its subcontract with Fuller." The District Court dismissed Eastern's complaint, and entered judgment on Fuller's counterclaim.[1]

Hartford, the primary insurer, paid Eastern its policy limit of $25,000, Appellants refused to pay, and Eastern brought this action for $26,407.75, due it for expenses incurred by it under its contract with Fuller in resheeting and reshoring the area that collapsed. The District Court granted Eastern a summary judgment in that amount, agreeing with Eastern that the responsibility for the occurrence was litigated in the earlier action. Appellants say that the earlier litigation, between Eastern and Fuller, did not determine Appellants' liability under the policy, which, it is contended, is not the same for Eastern's expense in doing its own work again as for its liability to provide reimbursement for the cost of work done by others (Fuller et al.). We find Appellants' approach sound in part, and requires a trial.

■ 1. Under "Coverage Z" of the Hartford policy, the insurers agreed to indemnify Eastern for:

> all sums which [Eastern], by reason of the liability assumed [by Eastern in its contract with Fuller] shall become legally obligated to pay as damages because of injury to or destruction of property . . . caused by accident.

Obviously, Appellants must respect the force of the first judgment insofar as it determined that Eastern was contractually obligated to pay Fuller for the re-

---

1. In the amount of $20,209, obtained by taking the expense incurred by Fuller, of $34,009, and deducting the $13,800 Fuller had previously withheld from Eastern.

placement shoring. Appellants say that their undertaking to indemnify Eastern on an obligation to pay "damages" does not apply because Eastern itself did the replacement. We do not agree. The essential risk was that which Eastern had assumed, by contract, embracing "injury to or destruction of property . . . caused by accident." It should make no difference whether Eastern fulfilled its obligation by replacing the shoring itself or whether Eastern, defaulting on the contract, was adjudged liable in damages to compensate Fuller for having the shoring replaced by another.

█ 2. We are concerned with the summary determination of amount, that Appellants were obligated to pay Eastern the sum of $26,497.75. This issue was stipulated, not litigated at the first trial, and Eastern had the incentive to maximize its claim of cost. The amount was not necessary to decision, since the ruling was that Eastern could not recover, from Fuller, whatever the cost of its reshoring. There would have been a basis for partial summary judgment against Appellants for costs incurred by Eastern in reimbursing Fuller, but that is not enough to sustain the judgment rendered.[2]

█ 3. More important is the bearing of the prior litigation on Appellants' defense based on Exclusion (i) in the policy, which excludes from the contractual liability coverage of the policy all damages resulting from:

> . . . injury to or destruction of any . . . work completed by [Eastern] out of which the accident arises.

In our view, the policy, with this clause, operates as follows: (a) The point of departure, subject to the definition of the exclusion clause, is the general obligation of the insurer to indemnify the insured for all damage to property that it was required by its contract to bear, and this applies whether the cause of the damage is an accident, unknown, or the insured's negligence. When the insured subcontractor transmitted that insurance policy to the general contractor, he knew he was fully protected. (b) When the damage is to property other than the work product of the insured, that liability remains unqualified. (c) When the damage is to the work product of the insured—and the insured bears either the cost of repair and replacement or the obligation to pay damages in that amount—then there is insurance coverage except as to any expense or obligation to repair or replace work product of the insured that has been defectively constructed. Our reading of the policy is supported by the decisions in the margin and their underlying analysis.[3]

█ It is in the light of these principles that we must consider the claim of collateral estoppel. Judge Hart did make a finding that there was no preponderance of evidence that Eastern was guilty of negligence in the doing of its work. But he did not rely on this finding in his conclusion or judgment, which was based exclusively on contract liability of Eastern, which he found to exist regardless of negligence or lack of negligence. The issue of Eastern's negligence therefore was not necessary to

---

2. There would have been a basis for summary judgment against Appellants for $9,000—to indemnify Eastern for the $34,000 it had to pay Fuller (see note 1), less the $25,000 obtained from Hartford. Possibly Appellants recognized a liability for this amount. In any event, it does not seem to have become focused as an issue in this litigation.

3. *E. g.,* Aetna Cas. & Sur. Co. v. Harvey W. Hottel, Inc., 110 U.S.App.D.C. 80, 289 F.2d 457 (1961) ; Home Indem. Co.

v. Miller, 399 F.2d 78 (8th Cir. 1968) ; Geddes & Smith, Inc. v. Saint Paul-Mercury Indem. Co., 51 Cal.2d 558, 334 P.2d 881 (en banc, per Traynor, J., 1959) ; Volf v. Ocean Accident & Guar. Corp., 50 Cal.2d 373, 325 P.2d 987 (en banc, per Traynor, J., 1958) ; Liberty Bldg. Co. v. Royal Indem. Co., 177 Cal. App.2d 583, 2 Cal.Rptr. 329 (1960) ; Hauenstein v. Saint Paul-Mercury Indem. Co., 242 Minn. 354, 65 N.W.2d 122 (1954) ; McGann v. Hobbs Lumber Co., 150 W.Va. 364, 145 S.E.2d 476 (1965).

judgment.[4] There is a question whether a so-called "evidentiary fact" can be the basis of a claim of collateral estoppel,[5] but we need not pursue that legal issue, because here we do not discern that any necessary finding of fact was dependent upon or even aided by the finding that it had not been shown that Eastern was negligent.

To this must be added the consideration that neither Eastern nor Hartford was interested in proving Eastern's negligence. Hartford was not interested in the applicability of "Exclusion clause (i)," which is the only provision as to which Eastern's negligence is pertinent, for its $25,000 liability was exhausted by Eastern's liability for expenses incurred by Fuller and others, a matter on which Eastern's negligence was not pertinent. All of this is apart from the problem that would have been presented if Hartford had been interested in showing Eastern's negligence in order to exculpate itself as insurer under "(i)," at the same time that it was representing Eastern in the litigation.[6]

This case has become confused by the fact that Appellants have interlaced suggestions of Eastern's fault, which we think would provide a defense under "(i)," with other contentions, that the policy does not apply to Eastern's work as a matter of coverage (apparently argued as excluding coverage even assuming Eastern was not negligent), which we do not accept. Insofar as a defense under (i) may turn on the possibility that Appellants will be able to prove Eastern was negligent, we do not think they were conclusively estopped or bound on this point by the prior litigation. And to the extent that Appellants may be held liable, they have the right to contest the amount of Eastern's expenses in re-shoring, without being bound by a stipulation by Fuller that was immaterial to the first judgment.

Reversed and remanded.

---

4. *See, e. g.*, Fibreboard Paper Prods. Co. v. Machinists Union, Local 1304, 344 F. 2d 300, 306 (9th Cir.), cert. denied, 382 U.S. 826, 86 S.Ct. 61, 15 L.Ed.2d 71 (1965) ; Restatement of the Law of Judgments § 68, comment (*o*) (1942) ; 1B J. Moore, Federal Practice ¶ 0.443[5].

5. See the leading case of The Evergreens v. Nunan, 141 F.2d 927 (2d Cir., per L. Hand, J.), cert. denied, 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944). *But cf.* 1B J. Moore, Federal Practice ¶ 0.442 [2].

6. See Comment, The Effect of Collateral Estoppel on the Assertion of Coverage Defenses, 69 Colum.L.Rev. 1459 (1969).