Emmett J. **STEBBINS**, Appellant,

v.

**KEYSTONE INSURANCE COMPANY et al.**

Emmett J. **STEBBINS**, Appellant,

v.

**INSURANCE COMPANY OF NORTH AMERICA et al.**

**Nos. 24658, 71–1043.**

United States Court of Appeals, District of Columbia Circuit.

No. 24658 Argued Oct. 22, 1971.

Decided June 5, 1973.

---

Emmett J. Stebbins, appellant pro se.

James F. Bromley, Washington, D. C., with whom James C. Gregg, Washington, D. C., was on the brief, for appellee, Keystone Ins. Co. and others in No. 24,-658.

Thomas C. Matthews, Jr., and William R. Weissman, Washington, D. C., were on the brief for appellee, Ins. Co. of

North America, and others in No. 71–1043.

Charles L. Reischel, Atty., E. E. O. C., with whom Julia P. Cooper, Chief, Appellate Section, George H. Weiler and Philip B. Sklover, Attys., E. E. O. C., as amicus curiae urging reversal.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

These are consolidated appeals[1] in two separate actions brought by Emmett J. Stebbins, in which he alleged *inter alia* that the defendant insurance companies had refused to employ him on account of his race. Both claims were dismissed by the District Court, which relied on the res judicata effect of an earlier judgment that Stebbins was "so lacking in elementary financial prudence, candor, stability, meaningful interest in the business world, and definite career direction that no prudent insurance company could reasonably offer to employ him in a position of fiscal trust. . . ." Finding that, in the context of this litigation, the doctrine of collateral estoppel was improperly applied in both of these cases, we reverse.

## I. BACKGROUND: THE FIRST INA LITIGATION

In late 1969, Stebbins filed a class action (Civil Action No. 2848–69) against the Insurance Company of North America (INA),[2] claiming racially discriminatory denial of job opportunities to himself and other blacks, in contravention of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and section 16 of the Civil Rights Act of 1870, 42 U.S.C. § 1981.[3] He alleged that, as

1. On October 22, 1971, this court heard oral argument in No. 24,658, Stebbins v. Keystone Insurance Co. At that time, it became apparent that the court would be materially assisted by examining the record and the issues raised in No. 71–1043, then pending, before determining the *Keystone* appeal. The court therefore consolidated the two appeals for disposition; and, on February 3, 1972, an order was

issued that No. 71–1043 would be decided without oral argument.

2. Named as codefendants were two INA affiliates, the Life Insurance Company of North America and the INA Life Insurance Company of New York.

3. This provision was based on § 1 of the Civil Rights Act of 1866, 14 Stat. 27.

part of INA's discriminatory practices, the company had refused to employ him or provide him with information concerning the positions of Claims Examiner, Adjuster, Supervisor, Technical Representative, and Manager.

On a record consisting of a deposition of Stebbins taken by INA, exhibits introduced by INA during this deposition, and affidavits from the company's officers, INA moved for summary judgment on three separate grounds: First, since Stebbins did not allege that he had ever applied for employment, he could not claim there had been a refusal to hire him. Moreover, the exhibits showed that INA had responded directly to his requests for job specifications and had repeatedly asked him to complete an application form, which had been mailed to him.

Second, INA contended that the record demonstrated Stebbins was unemployable in any position of fiscal trust in the insurance industry.[4]

Third, it was claimed that Stebbins had no standing to represent a class of aggrieved persons unless he himself had been the subject of unlawful discrimination.

The Equal Employment Opportunities Commission (EEOC) appeared at a hearing on June 17, 1970, as amicus curiae in support of INA's motion for summary judgment. Its counsel stated in oral argument that, since Stebbins had never applied for a position, the record demonstrated no Title VII violation as to him. The Commission also agreed that Stebbins' deposition showed he was unqualified for employment as an insurance adjuster or in a supervisory capacity. Finally, the EEOC argued that the court should strike the class action claims—not because Stebbins had failed to prove discrimination against himself[5]—but because he was not a competent class representative as required by Rule 23(a)(4), Fed.R.Civ.P.

INA recognized the heavy burden it carried in seeking summary judgment on the broad ground of Stebbins' unemployability. It pointed out that Stebbins had not offered any counteraffidavits and had failed to respond to INA's statement of undisputed material facts. In short, Stebbins failed to contest any of the issues upon which INA sought judgment, and his only opposition was based on his stated desire to conduct extensive discovery proceedings against INA—without intimating what relationship this might bear to INA's proffered defenses.

At the conclusion of the June 17 hearing, the trial court orally advised Stebbins that the motion for summary judgment would be granted on the grounds

---

4. INA based this contention on Stebbins' own statements taken by deposition. For example, "he testified that one of the prerequisites for any job that he would accept would be a good library so that he could continue his research for suits against [INA's] competitors. He further testified that the . . . suit against INA is but one step in what he termed his 'procedure plan' to raise procedural disputes, to obtain conflicts between various courts, and ultimately to have the pleasure of arguing in the Supreme Court of the United States. INA also argued that "[h]is testimony on deposition that he has held no steady job since 1966 [it then being 1970] demonstrates a lack of direction and interest in employment which would be necessary for a position as a responsible claims adjuster." In addition, INA pointed out, "[Stebbins testified that

he went to law school, spent two years there, not with any intent of learning to be a lawyer but because he 'wanted to set up a criminal racket and I felt if I knew the law I would be able to do it much better.'" INA conceded, however, that the latter statement, though made under oath, may have been in jest. Transcript of June 17, 1970, Hearing on INA's Motion for Summary Judgment, at 5, 7, 8 (Reproduced as Appendix B to Brief of EEOC in No. 71–1043).

Finally, INA submitted an affidavit from its personnel specialist, which concluded that Stebbins was unemployable in a position of fiscal trust in the insurance industry. *See id.* at 6.

5. The EEOC was apparently concerned to avoid a ruling on standing that might hamper the bringing of test cases. *See id.* at 11–13.

that Stebbins had not applied for a job and was "not employable in the insurance industry." One June 30, 1970, the court issued a memorandum[6] delineating the facts established by INA that were not in dispute. Based on these facts, the court concluded that the defendants had not engaged in unlawful employment practices under section 703(a)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e—2(a)(1).[7] Two separate grounds were cited for this conclusion: "by reason of the fact that plaintiff has refused to file an application for employment with INA," and because "plaintiff is so lacking in elementary financial prudence, candor, stability, meaningful interest in the business world and definite career direction that no prudent insurance company could reasonably employ him in a position of fiscal trust. . . . "[8]

Stebbins took no appeal from this judgment.

## II. THE PRESENT APPEALS

### A. The INA and EEOC Litigation

On July 8, 1970, Stebbins filed an independent action, which he styled "Complaint in the Nature of a Bill of Review," against INA and its subsidiaries, the EEOC, and certain of its officials (Civil Action No. 2036–70). He alleged that various improprieties had occurred in the earlier litigation, which vitiated its effect. In addition, he set forth a new claim, alleging that on June 18, 1970—one day after the trial judge had stated from the bench that summary judgment would be granted in the first INA suit—he had filed a formal employment application with INA and that the company had refused to hire him.

The District Court dismissed this action as to INA on November 9, 1970, relying on the res judicata effect of the June 30 judgment to bar Stebbins from relitigating the issue of his employability against the same defendants. Stebbins then filed a notice of appeal in forma pauperis, which the trial court denied as patently frivolous. Subsequently, when his claim against the EEOC was dismissed on January 5, 1971, Stebbins filed another notice of appeal and paid the filing fee on January 18.

This case has consistently been treated as a joint appeal against both INA and the EEOC. We pass by the motions ascribable to Stebbins' limited means,[9] and examine the issues he has raised.

6. Stebbins v. Insurance Co. of North America, 3 F.E.P.Cas. 246 (D.D.C., 1970).

7. The court rested its jurisdiction on § 706 of the 1964 Act, 42 U.S.C. § 2000e–5 (e), and intimated no view of whether the Civil Rights Act of 1870 provided an alternate basis for relief. Also, the District Court apparently declined to treat Stebbins as the representative of a class of aggrieved persons, though the court's opinion is silent on this point; and the grounds for this decision are nowhere stated.

8. Concluding that INA had, in fact, furnished Stebbins with all the information he had sought as to job descriptions and employee selection criteria, the District Court rejected on the merits Stebbins' assertion that INA had discriminatorily refused to provide him with employment information.

9. On May 27, 1971, INA moved to require Stebbins to file a supplemental appendix. By our order of June 15, 1971, this court directed Stebbins to file such an appendix including those items designated by INA and EEOC which had been omitted from the joint appendix. Stebbins moved on June 22 to vacate this order, but by per curiam order of July 21, 1971, we denied his motion. On July 23, Stebbins moved to require INA and EEOC to pre-pay the costs of printing the supplemental appendix; and on July 29, INA moved to compel Stebbins to file a cost bond. This court on October 15, 1971, issued a per curiam order denying Stebbins' motion of July 23 and directing him to show cause why the appeal should not be dismissed. On October 12, Stebbins responded to the show cause order by stating, in summary, that he was appealing in forma pauperis and could pay no costs. By per curiam order of December 14, 1971, Stebbins' reply to the show cause order, appellees' response thereto, and Stebbins' supplemental response were referred to the merits division. We resolve the matter by treating the appeal as one in forma pauperis, 28 U.S.C. § 1915, except as to any fees or costs hitherto paid.

## B. The Keystone Litigation

On December 19, 1969, Stebbins filed suit against the Keystone Insurance Company (Keystone) and its affiliates (Civil Action No. 3588–69), also alleging violations of Title VII and 42 U.S.C. § 1981. His complaint focused on two letters he had received from Keystone—in May of 1968 and in November of 1969—refusing to employ him. This suit and Stebbins' first action against INA were pursued concurrently in different trial courts. Stebbins and Keystone cross-moved for summary judgment; and their motions were heard on July 1, 1970—the day after the memorandum was issued in the INA case.

The court ruled orally—and in writing on July 8, 1970—that Keystone's refusal to hire, based on the fact that Stebbins had engaged in litigation against the company, violated 42 U.S.C. § 2000e—3(a); and Stebbins was granted partial summary judgment. But the remainder of Stebbins' complaint was dismissed on the ground that, as a predicate to claiming discrimination in hiring, the plaintiff must be qualified for the position he seeks. The court held that the issue of Stebbins' employability had been decided adversely in the first INA case and that Stebbins was therefore collaterally estopped to relitigate the matter against Keystone, citing Lober v. Moore, 135 U.S.App.D.C. 146, 417 F.2d 714 (1969). Finally, the court stated that "plaintiff's lack of qualifications deprive him of any right to claim damages under any aspect of the complaint."

Stebbins appeals from: (1) the ruling on collateral estoppel; (2) failure to award injunctive relief or punitive damages; and (3) failure to award counsel fees.

## III. THE ISSUES PRESENTED

### A. Collateral Estoppel

The central question, common to both appeals, is whether the judgment entered on June 30, 1970, in the first suit against INA bars Stebbins from relitigating the issue of his employability in the cases presently before us, his second action against INA, and his action against Keystone. Both of these cases relate to instances of discrimination distinct from that involved in the first INA suit. This question must be settled under principles not of res judicata,[10] but of collateral estoppel, the doctrine that governs the impact of the disposition of one controversy upon a different cause between the same parties, and which had led to an extension of that doctrine, invoked by Keystone (as a different party), that sameness of issue suffices if the party seeking to relitigate has already lost it after full opportunity to make his maximum effort.[11]

■ Broadly speaking, collateral estoppel bars a party from contesting in a subsequent proceeding any issue of fact actually litigated in and determined by a previous final judgment rendered by a court of competent jurisdiction. The judgment is not conclusive, however, as to issues that might have been litigated and determined in the earlier action, but were not; nor as to any matter not essential to judgment in the prior adjudication.[12]

10. See Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L. Ed. 1122 (1955); International Paper Co. v. Maddox, 203 F.2d 88 (5th Cir. 1953). Cf. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); People ex rel. Watchtower Bible & Tract Soc'y v. Haring, 286 App.Div. 676, 146 N.Y.S.2d 151 (3d Dep't, 1955).

11. See Blonder-Tongue Labs., Inc. v. University of Ill. Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Lober v. Moore, supra, 135 U.S.App.

D.C. at 148–152, 417 F.2d at 716–720 (and authorities cited therein); Smith v. Hood, 130 U.S.App.D.C. 43, 44, 396 F.2d 692, 693 (1968) (There is a "trend towards barring relitigation of an issue by a one-time loser. . . . ").

12. See Cromwell v. County of Sac, 94 U.S. (4 Otto) 351, 24 L.Ed. 195 (1877); F. James, Civil Procedure § 11.19 (1965); Restatement of the Law of Judgments § 68 (1942); Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 840 (1952).

■ For years, the commentators have put it that, when a judgment is expressly rested on two (or more) independent grounds, any ground that is sufficient to sustain the result may be used as the basis for a claim of collateral estoppel in a subsequent litigation.[13] But the text writers have stated this proposition as though it were self-evident and have not offered any persuasive supporting rationale. The handful of precedents customarily cited, none recent and the most of them readily distinguishable, likewise provide a mere mechanical recitation of the purported rule.[14]

In 1970, the rule was called into question, thoroughly re-examined, and rejected by the Second Circuit in Halpern v. Schwartz, 426 F.2d 102, the only case in the past 20 years to consider the question. The court squarely addressed the issue of whether a judgment expressly rested on three independent grounds gave rise to collateral estoppel on each of the grounds, or none of them. It concluded that, under the circumstances, no estoppel should be permitted. The court

pointed out the inconsistency between the purported rule and the general principle limiting collateral estoppel to matters "essential to judgment."[15] It distinguished the authorities cited in the texts; and it noted that, when the judgment rests on multiple grounds: (1) the court initially rendering judgment is less likely to have given full consideration to all the alternative bases when it appears that one of the grounds advanced is unassailable; and (2) there is no incentive to appeal when the losing party recognizes that one of the grounds is "solid," even if one or more of the alternative grounds is infirm.

■ Collateral estoppel has shown itself to be an extremely useful device for reducing the crush of litigation in the trial courts, and it goes a long way toward eliminating inconsistent decisions in cases with identical fact patterns and a common party. In part for these reasons, the recent trend has been to broaden the scope of its application.[16] *Halpern*, of course, runs against this current. The *Halpern* rule was evolved in the context of a bankruptcy case. We

13. 1B J. Moore, Federal Practice ¶ 0.443 [5]; Restatement of Judgments *supra* § 68, comment n; Polasky, Collateral Estoppel—Effects of Prior Litigation, 39 Iowa L.Rev. 217, n. 32 at 225 (1954); Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 10–15 (1942); Developments *Note supra*, 65 Harv.L.Rev. at 845.

Application of the rule is confined to cases in which both issues were expressly relied on by the court in the earlier action. If the basis for the first judgment is uncertain, then no estoppel is created as to any of the issues, even though they were actually litigated. Russell v. Place, 94 U.S. (4 Otto) 606, 24 L.Ed. 214 (1877); Horner v. Ferron, 362 F.2d 224, 230 (9th Cir.), cert. denied, 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966); Security Ins. Co. v. Johnson, 276 F.2d 182 (10th Cir., 1960).

Similarly, when a judgment specifically rested on alternative grounds is appealed, only those issues expressly considered by the appellate court can be used, as the basis for a plea of collateral estoppel. International Refugee Organization v. Republic S.S. Corp., 189 F.2d 858, 862 (4th

Cir., 1951); Restatement of Judgments *supra* § 69, comment b; 1B J. Moore *supra* ¶ 0.443[5] n. 10. *See* Allegheny County v. Maryland Cas. Co., 146 F.2d 633 (3d Cir., 1944), cert. denied, 325 U.S. 855, 65 S.Ct. 1184, 89 L.Ed. 1975 (1945).

14. *E. g.,* Patterson v. Saunders, 194 Va. 607, 74 S.E.2d 204 (1953) (the most recent case); Bank of America v. McLaughlin Land & Livestock Co., 40 Cal. App.2d 620, 105 P.2d 607 (1940) (the next most recent).

15. Norton v. Larney, 266 U.S. 511, 45 S. Ct. 145, 69 L.Ed. 413 (1925); Eastern Foundation Co. v. Creswell, 154 U.S. App.D.C. 240, 475 F.2d 351 (1973); Fibreboard Paper Prods. Co. v. Machinists Local 1304, 344 F.2d 300, 306 (9th Cir.), cert. denied, 382 U.S. 826, 86 S.Ct. 61, 15 L.Ed.2d 71 (1965); Restatement of Judgments *supra* § 68, comment o.

16. *E. g.,* Lober v. Moore *supra*; Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n, 19 Cal.2d 807, 122 P.2d 892 (1942) (per Traynor, J.); B. R. DeWitt, Inc. v. Hall, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967).

need not decide whether the *Halpern* approach is sound if applied as a general rule to a wide range of matters. We are convinced that it is properly applied in the situation before us, where one of the grounds urged by the prevailing party, and accepted by the court, was the failure of the losing party to make an extra-judicial request or demand, or pursue a non-judicial remedy, prior to presenting his claim to the court. In Stebbins' initial suit for employment discrimination, brought on the ground that INA had refused to hire him because of his race,[17] the District Court held that failure to plead and prove that he had sought employment with INA was fatal to his cause of action. The first INA judgment was not appealed; and we need not and do not consider on the merits the District Court's ruling that, as a matter of law, a Title VII plaintiff must file a formal employment application as a precondition to bringing suit. That ruling, right or wrong, was of no crucial significance to Stebbins— he could readily cure the defect found by the trial court, as he did, by filing an employment application with INA and beginning another action upon the denial of employment.

The settled rule that collateral estoppel applies only to matters that have been actually litigated,[18] has plain justification: when the parties to a lawsuit actively contest an issue, the resulting judgment bears sufficient reliability to preclude subsequent inquiry; and re-litigation of the same issue would be wasteful of judicial resources. It is, however, standing that principle on its head to maintain, in effect, that a party must fully litigate each and every issue solely for the purpose of avoiding collateral estoppel. If the doctrine of collateral estoppel were applicable to this kind

of case, it would compel extensive and unnecessary litigation in both the trial and the appellate courts. Though confronted with an easily remediable defense of failure to exhaust non-judicial remedies, a plaintiff would have to wage battle on the merits, both in the trial court with affidavits, proffers, discovery, motions, and trial if permitted, and in the appellate court. Here, INA's exhaustion defense was at least plausible —it was supported by EEOC. But in any event it was remediable. We can see no merit in a doctrine of collateral estoppel that would require Stebbins to appeal an adverse judgment and say, in effect: "May it please the court, since I can institute a new action merely by filing an employment application, it is immaterial to me whether the judgment is affirmed or reversed on this ground; but I have taken this appeal to make certain that the affirmance will not give rise to collateral estoppel on the alternate ground of unemployability."

■■■ In our view, the doctrine of collateral estoppel is not applicable where, as in this case, one ground of the judgment does not finally adjudicate the case on its merits but operates, much like a common law plea in abatement, to permit continued or further litigation upon an appropriate amendment or refiling, if relief continues to be withheld. In that event, a party may acquiesce in the judgment and take whatever steps are necessary to keep alive or rekindle his prayer for relief without being bound or estopped by any alternative ruling on the merits, and without being required to burden the appellate courts with an essentially futile appeal.

So stating, we do no more than to apply, with some difference in articulation and context, the approach laid down in Bland v. Connally, 110 U.S.App.D.

---

17. Stebbins' additional claim that INA refused to provide him with information concerning employment opportunities (see note 8 *supra*) has no bearing upon the collateral estoppel issue raised on this appeal.

18. Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 671, 64 S.Ct. 268, 88

L.Ed. 376 (1944) ; Cromwell v. County of Sac *supra* 94 U.S. at 353, 24 L.Ed. 195 ; Restatement of Judgments *supra* § 68(2) & comments c–f; 1B J. Moore *supra* ¶¶ 0.443[1] at n. 4, 0.443[3].

C. 375, 293 F.2d 852 (1961),[19] and Horner v. Ferron, 362 F.2d 224 (9th. Cir.) cert. denied, 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966).[20]

The initial action Stebbins brought against INA alleged a policy of racially discriminatory hiring. Although this claim carries overtones of continuing injury, the cause of action itself arose from a specific instance in which INA had allegedly refused to hire Stebbins. The defense that Stebbins failed to prove he had applied for employment, was sufficient, in the view of INA, EEOC, and the trial court for a final judgment of dismissal as to the particular instance of alleged discrimination. It did not put to rest the underlying grievance that Stebbins complained of. It permitted a kind of intermediate disposition similar, in effect, to the dismissal in *Bland* for failure to exhaust administrative remedies, and in *Horner* for the failure to make the statutorily required demand for cure.[21] Stebbins remedied this defect forthwith by filing the formal application and demand for employment. INA's refusal was likewise prompt and unequivocal; and Stebbins thereupon filed his action anew. Technically, this was a new cause of action, rooted in a different instance of alleged discrimination. Its practical effect was merely to continue Stebbins' ongoing controversy with INA after a futile demand.

\* \* \*

We are pleased to supplement our opinion by taking note of the subsequently-obtained Tentative Draft No. 1 of Chapter 3 of Restatement, Second, Judgments, approved not only by the Council of the American Law Institute, but also in principle by its membership, at a session held May 17, 1963, after the foregoing was set in type. The approach of the Tentative Draft on the exceptions to the rules of res judicata and issue preclusion is clearly supportive of both our approach and result in this case, though there may be divergences in our jurisprudence in other aspects of the problem.[21a]

19. In *Bland* we considered the merits of a challenge by a reserve officer to the Navy's action in giving him a qualified discharge. The suit was held maintainable despite a prior ruling by the Ninth Circuit refusing to enjoin the Navy's action on the ground that Bland had not exhausted his administrative remedies, even though the Ninth Circuit had also rejected on the merits plaintiff's claim that his status as an inactive reservist deprived the Navy of jurisdiction to issue him a discharge under conditions other than honorable, Bland v. Hartman, 245 F.2d 311 (9th Cir., 1957). This court reversed a dismissal of the complaint that had been entered on grounds of res judicata and held that the judgment of the Ninth Circuit must be confined to the issue of exhaustion of remedies and that, this defect having been cured, Bland was free to proceed in a second action going to the merits of his claim.

20. In *Horner* it was held that suit could be maintained against certain District and National union officers for breach of fiduciary duties, even though, in a prior action against local officials, the District Court had refused to join the District and National officers as additional parties because the plaintiffs had failed to make a demand on these defendants to cure the alleged irregularities. The Ninth Circuit, citing *Bland*, held that the earlier judgment related to "a procedural [defect] which is capable of correction." Assuming there was also a ruling on the merits, the court said this "could not, by operation of the doctrine of *res judicata* or collateral estoppel, prevent [the plaintiffs] from correcting the procedural mistake in a subsequent and independent action. . . ." 362 F.2d at 230.

21. 29 U.S.C. § 501(b). *Cf.* Rule 23.1, Fed. R.Civ.P. (demand on directors as a precondition to instituting shareholders' derivative suit) ; 3B J. Moore *supra* ¶ 23.-1.19.

21a. The distinguished Reporters, Professors Benjamin Kaplan (now Associate Justice of the Supreme Judicial Court of Mssachusetts) and David Shapiro, have pertinent discussion at several places in the draft chapter. Concerning the bar effect of a prior judgment in favor of the defendant on the same claim (res judicata) :

§ 48.1 Judgment for Defendant—Exception to the General Rule of Bar.

.    .    .    .    .

*B. Other Issues*

\* \* \*

We concur in the trial court's conclusion that the other issues raised by Stebbins in No. 71–1043 are without merit.

(2) A valid and final personal judgment for the defendant which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law, or the circumstances are such that it would be manifestly unfair to subject the defendant to such an action.
And in the Comments:

  *e. Alternative Determinations.*

. . . . .

  A dismissal may be based on two or more determinations, at least one of which, standing alone, would not render the judgment a bar to another action on the same claim. In such a case, if the judgment is one rendered by a court of first instance, it should not operate as a bar. . . . Even if another of the determinations, standing alone, would render the judgment a bar, that determination may not have been as carefully or rigorously considered as it would have if it had been necessary to the result, and in that sense it has some of the characteristics of dicta. And, of critical importance, the losing party, although entitled to appeal from both determinations, may be dissuaded from doing so as to the determination going to the "merits" because the alternative determination, which in itself does not preclude a second action, is clearly correct. The rules of res judicata should not encourage or foster appeals in such instances.

This Draft uses new terminology—"issue preclusion"—to embrace direct estoppel and collateral estoppel. The broad principle is set forth in § 68:

  § 68. Issue Preclusion—General Rule
  When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

. . . . .

■■ 1. Stebbins' challenge to the EEOC's authority to appear as amicus curiae at the hearing on INA's motion to dismiss is frivolous. Section 705(h) of Title VII, 42 U.S.C. § 2000e—4(g), specifically authorizes EEOC attorneys to represent the Commission as a party

But in Comment *i*, the Draft provides:
  *i. Alternative determinations by court of first instance.* If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone. (. . . Cf. § 48.1, Comment *e.*)

. . . . .

  There are, however, persuasive reasons for analogizing the case to that of the nonessential determination. . . . First, a determination in the alternative may not have been as carefully or rigorously considered as it would have if it had been necessary to the result, and in that sense it has some of the characteristics of dicta. Second, and of critical importance, the losing party, although entitled to appeal from both determinations, might be dissuaded from doing so because of the likelihood that at least one of them would be upheld and the others not even reached. If he were to appeal solely for the purpose of avoiding the application of the rule of issue preclusion, then the rule might be responsible for increasing the burdens of litigation on the parties and the courts rather than lightening those burdens.
The Tentative Draft finds an exception to issue preclusion in case of alternative determinations by a trial court even when both were on the merits. We need not consider that problem, for here the alternative determination was on a correctible defect of failure to satisfy a precondition to suit, and that is so clear a matter that the Tentative Draft considers it not to bar relitigation of the same claim, *see* § 48.1(2) and Comment *e.* The Tentative Draft concludes that the general rule of issue preclusion should apply when there are alternative determinations by a court of appeals, as distinguished by a court of first instance. See § 68, Comment o. But Comment o does not specifically take up the situation in *Bland, supra* note 19, where one of the grounds of the appellate court was a correctible lack of precondition of suit. We have no occasion to reconsider the appropriate rule for that particular situation.

or as amicus curiae. This is in no wise undercut by the independent power to refer cases to the Attorney General under 42 U.S.C. § 2000e—4(f)(6). EEOC did not exceed its authority in commenting, as it did on the legal consequences of the record before the District Court. It was not required to develop its own administrative record in order to proffer its expertise to the court as amicus curiae. The District Court properly dismissed Stebbins' claim that EEOC's counsel committed perjury in the District Court. The record is clear that counsel was appearing purely as an advocate presenting oral argument and was not offering testimony.

### 2. *Matters relating to INA.*

■ *a.* Stebbins' claim that INA committed fraud on the court, that INA had altered his deposition and had submitted fraudulent affidavits, was treated as a motion under Rule 60(b), Fed.R. Civ.P., for relief from judgment, and dismissed November 9, 1970, on the ground that Stebbins had consistently refused to specify what portions of these documents had been altered or falsified. We affirm. Stebbins had made similar claims of fraud, without particularity, in a motion to dismiss these documents; and he had been repeatedly instructed that his claims of fraud must be made specific. INA submitted affidavits that the documents in question had not been tampered with. It was within the discretion of the trial judge to dismiss claims of fraud consisting wholly of conclusory assertions without any supporting evidence.[22]

■ *b.* In the context of Stebbins' ongoing litigation with INA, the trial court correctly found that there was nothing unreasonable, unfair, or retaliatory about the letter of June 19, 1970, from INA's counsel, requesting that Stebbins conduct all further business with INA through its attorney. Nothing in this letter in any way inhibited Stebbins from seeking employment with or communicating with the defendant, so long as he proceeded through INA's counsel.

### IV. DISPOSITION

The judgments in both No. 24,658[23] and No. 71–1043 are reversed and remanded for further proceedings not inconsistent with this opinion.

So ordered.

BAZELON, Chief Judge (concurring):

I concur in the result reached by the majority opinion, but on somewhat different grounds. I agree that the judgment of June 30, 1970, should not estop Stebbins from relitigating the issue of his employability in the course of pressing his claims of racial discrimination against members of the insurance industry. But that Stebbins appeared pro se in the first INA litigation is of crucial significance for me.

It is true that a person appearing on his own behalf is entitled to no special privileges or rights unavailable to parties represented by counsel.[1] I am aware that Stebbins' litigious history and two years of legal training have caused courts in the past to rule against him on procedural and technical matters.[2] The

---

22. *See* Mastini v. American Tel. & Tel. Co., 369 F.2d 378 (2d Cir., 1966), cert. denied, 387 U.S. 933, 87 S.Ct. 2055, 18 L.Ed.2d 994 (1967); Atchison, T. & S. F. Ry. v. Barrett, 246 F.2d 846 (9th Cir., 1957); Assmann v. Fleming, 159 F.2d 332 (8th Cir., 1947); 7 J. Moore *supra* ¶ 60.24[5]. *Cf.* Rule 9(b), Fed.R.Civ.P. (allegations of fraud to be made with particularity in pleadings).

23. The question of damages and attorney's fees must also be reconsidered, since the

trial court rested its judgment disallowing such compensation on the assumed fact of Stebbins' unemployability.

1. *See* Mazique v. Mazique, 123 U.S.App. D.C. 48, 356 F.2d 801, cert. denied, 384 U.S. 981, 86 S.Ct. 1882, 16 L.Ed.2d 691 (1966); Barnes v. United States, 241 F. 2d 252 (9th Cir. 1956).

2. *See* Stebbins v. Nationwide Mutual Ins. Co., 469 F.2d 268, (4th Cir. 1972); Stebbins v. Continental Ins. Cos., 143 U.S.

question of employability, however, is a matter of such importance that Stebbins' actual understanding of the consequences of the course of action he took must be considered.

It appears from the record in the INA litigation that Stebbins thought he had a right to proceed with discovery against INA before his case would be dismissed from court. Indeed, the interrogatories he wanted answered contained the core of his discrimination claim. Since discovery is usually the cornerstone of any successful discrimination complaint,[3] Stebbins is not to be faulted for actively pursuing discovery.

It further appears that in failing to contest INA's motion for summary judgment, Stebbins was not engaging in a deliberate, willful or contemptuous attempt to frustrate the proceedings. Nor was he refusing to comply with an order of the court.[4]

Given these facts, I do not believe that Stebbins had any knowledge of the collateral consequences of the INA judgment. The actual foreseeability of these consequences is an important factor for this court to consider in deciding whether the effect of the INA judgment should be collaterally extended against him.[5]

Also, in the area of employment discrimination, these consequences are particularly severe. Stebbins is literally barred from pressing any of his claims in court. His suits have been dismissed in another Circuit, seemingly without any analysis of whether changed circumstances or the passage of time affected the applicability of the June 30th judgment.[6]

Stebbins is attempting to prove claims of an extremely sensitive nature against a number of large insurance companies. We must be especially cautious not to place unwarranted roadblocks in the way of discrimination litigation which is commonly brought by indigent or pro se members of minority groups.[7]

To avoid this problem, the trial court could have given Stebbins a minimal amount of information about the consequences of his failure to contest the motion for summary judgment. I do not think that it is the duty of the court to fully educate a litigant who continuously appears pro se,[8] but neither is it fair or just for the court to ignore palpable ignorance in rendering a judgment with such drastic consequences.

## SPOTTSWOOD W. ROBINSON, III, Circuit Judge (concurring):

I join in Judge Leventhal's opinion in toto but I believe Judge Bazelon also makes a strong point. It simply cannot be assumed that an ordinary *pro se* litigant is conversant with the intricacies of collateral estoppel or summary judgment. That is not to suggest that these wholesome doctrines are to be cast aside simply because the litigant is a layman. It is to say, however, that the presence of such a litigant may summon the court

---

App.D.C. 121, 442 F.2d 843 (1971); Stebbins v. State Farm Mutual Automobile Ins. Co., 134 U.S.App.D.C. 193, 413 F.2d 1100, cert. denied, 396 U.S. 895, 90 S.Ct. 194, 24 L.Ed.2d 173 (1969); Stebbins v. Nationwide Mutual Ins. Co., 382 F.2d 267 (4th Cir. 1967).

3. *See, e. g.,* Lea v. Cone Mills Corp., 301 F.Supp. 97 (M.D.N.C.1969), aff'd in part and vacated in part, 438 F.2d 86 (4th Cir. 1971).

4. *Compare* Stebbins v. State Farm Mutual Automobile Ins. Co., 134 U.S.App.D.C. 193, 413 F.2d 1100 (1969).

5. *See generally,* Polasky, Collateral Estoppel—Effects of Prior Litigation, 39 Iowa L.Rev. 217, 221; Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 841–42 (1952).

6. Stebbins v. Nationwide Mutual Ins. Co., 469 F.2d 268 (4th Cir. 1972), affirming Civil Action No. 373–69–A (E.D.Va., Sept. 9, 1971).

7. *Cf.* Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979 (issued May 9, 1973).

8. *Cf.* Carrigan v. California State Legislature, 263 F.2d 560 (9th Cir.), cert. denied, 359 U.S. 980, 79 S.Ct. 901, 3 L.Ed.2d 929 (1959).

to the minor effort needed to make sure that they do not become traps for the legally unlearned.[1]

We have long recognized that laymen cannot be held to the standards of performance expected of members of the bar.[2] Collateral estoppel is not an inexorable rule of law, and where a lay litigant may not be aware of the need to oppose an assertion of fact, the court's failure to indicate the consequences may promote just that·kind of unfairness which gives reason for refusing to recognize a bar from the ensuing judgment.[3]

I think, then, that if the fact that Stebbins was an unrepresented layman were the only pivotal consideration in the case, we would have to proceed, as Judge Bazelon does, to determine whether Stebbins was so knowledgeable that the absence of such a warning was nonprejudicial. I do not reach that question, however, because I agree with Judge Leventhal that an estoppel could not arise here, and reversal is in any event required.

1. Compare Johnson v. United States, 132 U.S.App.D.C. 4, 405 F.2d 1072 (1968).

2. See Johnson v. United States, *supra* note 1; Fulwood v. Clemmer, 111 U.S.App. D.C. 184, 186 n. 5, 295 F.2d 171, 173 n. 5 (1961) ; Smith v. United States, 106 U.S.App.D.C. 169, 170, 270 F.2d 921, 922 (en banc 1959).

3. Compare Amsden v. United States, 175 F.Supp. 147, 148–149, 146 Ct.Cl. 809 (1959) ; Adams v. Pearson, 411 Ill. 431, 104 N.E.2d 267, 272 (1952) ; State ex rel. White Pine Sash Co. v. Superior Court, 145 Wash. 576, 261 P. 110, 111 (1927) ; White v. Adler, 289 N.Y. 34, 43 N.E.2d 798, 802 (1942).